In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-2439

CHARLES W. KING,

*Petitioner-Appellee*,

*v.*

COMMISSIONER OF INTERNAL REVENUE,

*Respondent-Appellant*.

Appeal from the United States Tax Court.
No. 6374-11L — **Elizabeth Crewson Paris**, *Judge*.

ARGUED MAY 27, 2016 — DECIDED JULY 20, 2016

Before POSNER and FLAUM, *Circuit Judges*, and ALONSO, *District Judge*.[*]

POSNER, *Circuit Judge*. The late Charles King was a lawyer who for several years had failed to pay his quarterly payroll taxes (employment taxes that an employer pays directly to the government). After the Internal Revenue Service notified King of his delinquency he asked permission to pay his

---

[*] Of the Northern District of Illinois, sitting by designation.

overdue payroll taxes in installments, and the IRS replied that it would be "happy to honor [his] request for an installment payment plan." But after formally assessing the taxes and penalties that King owed, as well as the interest on those taxes, the IRS told him that he'd have to provide certain additional financial information before his eligibility for an installment plan could be determined. Eventually the IRS decided that King's income and assets were too high to justify an installment program; he had had enough income and assets to pay the payroll taxes when they were due, together with any penalties and interest that had accrued by that date.

He paid the taxes in October 2011 but requested abatement of (that is, not having to pay) of interest that had accrued after March 5, 2009, the date on which the IRS had told him it would honor his request for an installment payment plan. He argued that had the IRS informed him from the outset that he would not be allowed an installment plan, he would have paid the payroll taxes sooner and as a result would have owed less or maybe no interest for having delayed paying the taxes.

The IRS turned him down. Although 26 U.S.C. § 6404(a) allows abatement of "the unpaid portion of the assessment of any tax or any liability in respect thereof, which—(1) is excessive in amount, or (2) is assessed after the expiration of the period of limitation properly applicable thereto, or (3) is erroneously or illegally assessed," the Service told King that the interest he'd been charged was "not exces[s]ive[,] having been calculated according to IDRS [acronym for "Integrated Data Retrieval System", a computer system used by the IRS] as per usual and customary changes in governing interest

rate." The Service added that King hadn't said it was excessive, and also that it had been timely assessed and "was not erroneously or illegally assessed." Oddly, the precise amount of interest King sought to abate is not in the appellate record. The total interest that King owed and ultimately paid, including but not limited to the amount he had sought to be abated, was about $6,300, of which $500 is estimated to be the amount of interest that the Tax Court was ordering abated.

Other provisions of 26 U.S.C. § 6404, besides subsection (a), provide other grounds for abatement—notably (e) ("abatement of interest attributable to unreasonable errors and delays by Internal Revenue Service"), but (e) doesn't apply to payroll taxes. *Scanlon White, Inc. v. Commissioner*, 472 F.3d 1173, 1176–77 (10th Cir. 2006); see also 26 C.F.R. § 301.6404–2(a)(1)(i), Treas. Reg. § 301.6404–2(a)(1)(i).

In his suit for abatement, King asked the Tax Court to review the IRS's rejection of his claim, arguing that the interest it had charged was excessive. The court conducted a trial at the conclusion of which it ruled that the Internal Revenue Service's authority to abate interest that is "excessive in amount" (the ground of abatement in section 6404(a)(1) of the Internal Revenue Code) must incorporate "a concept of unfairness under all of the facts and circumstances" (quoting *Law Offices of Michael B.L. Hepps v. Commissioner*, T.C. Memo. 2005-138, at *10), and that the IRS's "failure to communicate to [King] the deficiencies of his proposed installment agreement was unfair to [him] under all the facts and circumstances." The interest that had accrued to the government as a result of this unfairness was therefore "excessive," and the

government's denial of King's request to abate the excessive interest was "an abuse of discretion."

The result was not a complete victory for King, because the Tax Court found him entitled to abatement only of interest that had accrued during the two-month period after the IRS had assessed the amount King owed, after which King "knew or should have known the requirements for submitting an installment agreement."

Despite the small cost of King's victory to the federal fisc, the Internal Revenue Service appealed. King died shortly after the appeal was filed. We asked his widow whether she wanted to participate in the appeal (whether in person or by a lawyer), but she did not respond to our invitation; and so the only brief filed in the appeal was filed by the IRS and the only oral argument was by a lawyer from the Justice Department's Tax Division. The status report mentioned later in this opinion suggests that the widow was interested in the money but didn't want to pay for a lawyer or proceed pro se. She may have thought that since her husband had prevailed in the Tax Court, our court was likely to affirm and in that event she would get to keep the interest that the suit sought abatement of without having incurred any expense. There are also indications that, distraught by her husband's death, which had been sudden, she felt overwhelmed by having to deal with the Internal Revenue Service.

But the consequence is that there is no appellee, and an appeal without an appellee is problematic, so we must consider carefully whether we have jurisdiction.

The IRS learned of King's death on September 8, 2015, and before the end of the day wrote the clerk of the Seventh

Circuit to tell us the news. His appeal had been docketed two months earlier. A lawyer, who had represented himself in the Tax Court, King presumably would have continued to represent himself in our court had he lived.

After learning of King's death we asked the IRS for a status report "regarding any information it has received about whether an estate has been opened for the appellee and how this appeal should proceed." The Service responded that no personal representative had been appointed for the estate, but that the appeal had not become moot because King's widow still had an interest in the refund even if she chose not to participate in the appeal. She could complete IRS Form 1310 ("Statement of Person Claiming Refund Due a Deceased Taxpayer") and submit it to the IRS. The IRS also said we could appoint someone to be the personal representative of the estate for purposes of the appeal. We asked King's widow to respond to the status report, but she never did, and in March of this year, before the oral argument of the appeal, we issued an order that given her lack of response the appeal would be submitted for decision without a brief or oral argument on behalf of the appellee. And so it was.

The case is not moot. The Internal Revenue Service, the appellant, does not want to give up, whether to the widow or anyone else who might make a claim, the interest that King sought to abate and that the Tax Court ordered the IRS to abate. The IRS will have to forgo the interest unless it succeeds in overturning the Tax Court's decision. Its claim is therefore cognizable by this court and the case very much alive. The consequences of an affirmance are somewhat uncertain, but it's a fair guess that if the Tax Court's decision

were upheld the widow or some other relative of King, or perhaps his favorite charity, invoking *cy près*, would show up to claim the money. But the important point is that a party's failure to appear cannot be permitted to defeat a valid claim of the opposing party, which in this case is the Internal Revenue Service, the appellant.

So we proceed at last to the merits. The Service in our view was on sound ground in refusing to abate (i.e., forgive) interest King owed the government on his overdue payroll taxes. There are three reasons for our conclusion. The first is the vagueness of "unfairness" as a criterion for abatement; the word is an invitation to arbitrary, protracted, and inconclusive litigation. Second, extending as it does an invitation to taxpayers to delay paying taxes, the nebulous standard of "unfairness" could result in a significant loss of tax revenues. And third, we'll see that the Tax Court's approach is inconsistent with a valid regulation promulgated by the Treasury Department.

Elaborating the first point briefly, we note the embroidery that the Tax Court, quoting from its earlier opinion in *H & H Trim & Upholstery Co. v. Commissioner*, T.C. Memo. 2003-9, at *2, wove into its opinion in the present case on the basis of its touchstone of "unfairness under all of the facts and circumstances"—its belief that the "word 'excessive' takes into account the concept of what is fair, or more appropriate here, unfair," and its approving references to a dictionary's definition of "excessive" as "whatever notably exceeds the reasonable, usual, proper, necessary, just, or endurable" (what on earth is "endurable" doing in this list?) and to "just" as meaning "equitable" and "equitable" as meaning "fair." This terminological potpourri can provide

no guidance to taxpayers, their advisers, IRS agents, or the Tax Court. It's a monkey wrench tossed into the machinery of tax collection.

Regarding our third reason for rejecting the Tax Court's analysis, a tax regulation entitled "Abatements," 26 C.F.R. § 301.6404–1(a), Treas. Reg. § 301.6404–1(a), while generally tracking 26 U.S.C. § 6404(a), restates "excessive in amount" as "in excess of the correct tax liability." The restatement eliminates the vagueness of "excessive" and leaves no room for basing interest abatements on "unfairness." The Tax Court's opinion dismissed the regulation as "less-than-illuminating" and insufficient to overcome what it deemed the "unambiguous, plain meaning of 'excessive.'" But as construed by the Tax Court "excessive" is vague because it incorporates the nebulous concept of "unfairness." See *Chevron U.S.A. Inc. v. National Resources Defense Council, Inc.*, 467 U.S. 837, 842–43 (1984). "In excess of the correct tax liability" is both precise and a plausible, as well as a sensible, interpretation of "excessive," an ambiguous statutory term. "In excess of the correct tax liability" makes clear that the business of the federal taxing authorities is numbers, not kindliness, generosity, or sensitivity.

The Supreme Court has said that "filling gaps in the Internal Revenue Code plainly requires the Treasury Department to make interpretive choices for statutory implementation at least as complex as the ones other agencies must make in administering their statutes." *Mayo Foundation for Medical Education & Research v. United States*, 562 U.S. 44, 56 (2011). The interpretive choice in this case is found in the regulation defining the statutory term "excessive in amount" to mean "in excess of the correct tax liability." 26 C.F.R.

§ 301.6404–1(a), Treas. Reg. § 301.6404–1(a). As there is no indication that the IRS is misinterpreting its regulation, there is no need for us to consider the possible inroads that recent Supreme Court decisions have made into "*Auer* deference" (judicial deference to agencies' interpretations of their own regulations), inroads discussed for example in Michael P. Healy, "The Past, Present and Future of *Auer* Deference: *Mead*, Form and Function in Judicial Review of Agency Interpretations of Regulations," 62 *Kansas Law Review* 633 (2014).

The judgment of the Tax Court is reversed with instructions to dismiss King's petition.

REVERSED