T.C. Memo. 2018-149

UNITED STATES TAX COURT

BRIAN H. MCLANE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20317-13L.                      Filed September 11, 2018.

P filed a Federal income tax return for his 2008 taxable year
that claimed deductions on Schedule C, Profit or Loss From Business.
R determined a deficiency for that year on the basis of his
disallowance of those deductions and purportedly mailed P a notice
of deficiency that P did not receive. R later issued to P a notice of
Federal tax lien (NFTL) in regard to P's 2006 and 2008 taxable years.
After a collection due process hearing, R issued a notice of
determination sustaining the NFTL for both years. In his petition
seeking review of the notice of determination, P assigned no error in
regard to his 2006 taxable year but challenged R's assessment of a
deficiency for 2008 on the grounds that R had not mailed him a notice
of deficiency. P also claimed that R's Appeals Office (Appeals) had
not given him sufficient opportunity to substantiate the expenses
underlying the disallowed deductions. In a supplemental hearing
following our remand of the case, Appeals allowed about half of the
deductions P claimed. P presented further documentation of his
business expenses during and after our trial of the case that eventually
led R to concede P's entitlement to deductions in excess of those

[*2] claimed on his return. R has thus agreed to abate his assessment of a deficiency for P's 2008 taxable year and release the lien for that year. P asks us to determine an overpayment of his 2008 Federal income tax and order a refund of that amount.

Held: I.R.C. sec. 6330(d)(1) gives us no jurisdiction to determine and order the credit or refund of an overpayment for any of the years in issue. Greene-Thapedi v. Commissioner, 126 T.C. 1 (2006), followed.

Brian H. McLane, pro se.*

Wendy Yan, Nancy M. Gilmore, and Elizabeth C. Mourges, for respondent.

MEMORANDUM OPINION

HALPERN, Judge: This case is before us to review a determination by the Internal Revenue Service Appeals Office (Appeals) to sustain a notice of Federal tax lien (NFTL) respondent issued to petitioner in regard to his taxable years ended December 31, 2006 and 2008. In his petition, petitioner made no assignment of error concerning his 2006 taxable year but alleged that an assessment of additional tax for his 2008 taxable year was invalid because the

---

*Brief amicus curiae was filed by Jacqueline Lainez-Flanagan (Professor), Carlton M. Smith, and Roxy Araghi (student), University of the District of Columbia David A. Clarke School of Law Tax Clinic.

[*3] period of limitations provided in section 6501[1] had expired before assessment. Petitioner also claimed that Appeals did not give him sufficient opportunity to substantiate expenses underlying deductions he claimed on his 2008 Federal income tax return that respondent had disallowed.

Petitioner's 2008 return included a Schedule C, Profit or Loss From Business, reporting a net profit (gross income less deductible expenses) from his contracting business. Respondent's notice of deficiency disallowed almost all of the deductions petitioner claimed on his Schedule C. At a supplemental hearing that Appeals conducted after we remanded the case to allow for fuller consideration of petitioner's challenges to the validity of respondent's assessment for his 2008 year, petitioner presented documentation that led Appeals to allow about half of the deductions he had claimed on his 2008 Schedule C. Petitioner presented additional documentation at and after our trial of the case that led respondent to allow further deductions. Petitioner eventually established to respondent's satisfaction that he was entitled to deductions in amounts in excess of those claimed on his return. As a result, respondent now concedes that "petitioner's correct tax liability for 2008 is $0.00." Respondent's concession

---

[1]All section references are to the Internal Revenue Code in effect at all relevant times. We round all dollar amounts to the nearest dollar.

**[*4]** regarding petitioner's liability renders moot any issue regarding the validity of respondent's assessment of additional tax liability for petitioner's 2008 taxable year. Respondent further concedes that petitioner is entitled to abatement of the additional liability respondent sought to collect and the release of the lien for his 2008 taxable year.

Although, as respondent observes, his abatement of petitioner's 2008 tax liability and release of the lien for that year is "the very relief that petitioner sought when he challenged the original * * * notice of determination", petitioner is unsatisfied with that result and claims that he is entitled to a refund of tax for his 2008 taxable year. Thus, the only issue remaining for our consideration is our jurisdiction to determine and order a credit or refund of any overpayment petitioner might have made for 2008.

Background

Petitioner filed a Federal income tax return for the taxable year ended December 31, 2008, that reported a tax liability of $2,426. Respondent received petitioner's 2008 return on October 19, 2009.

Petitioner's 2008 return included a request for an installment agreement under which petitioner would pay his 2008 tax liability in monthly payments of $100. Between December 24, 2009, and October 14, 2010, petitioner made

[*5] payments of $957 toward that liability. He paid an additional $800 between November 29, 2010, and September 21, 2012.

In February 2013, respondent assessed petitioner additional tax of $23,615 for his 2008 taxable year. Petitioner, however, did not receive a notice of deficiency concerning that assessment.

After respondent issued petitioner the NFTL in March 2013, petitioner timely requested a collection due process (CDP) hearing. Following that hearing, respondent issued petitioner a notice of determination sustaining the NFTL. In response, petitioner, who then resided in Maryland, filed with this Court a "Petition for Lien Action Under Code Sections 6320(c) and 6330(d)". That petition assigns no error in regard to petitioner's 2006 taxable year but asserts that respondent issued no notice of deficiency to him for 2008.

During a conference call with the parties on February 21, 2018, upon being apprised by respondent's counsel that the deductions respondent allowed as a result of petitioner's submission of additional documentation during and following trial had eliminated petitioner's tax liability for 2008, we asked the parties whether they objected to our entry of a decision upholding respondent's determination only in regard to petitioner's 2006 taxable year. While respondent's counsel voiced no

**[*6]** objection, petitioner objected on the basis of his belief that he is now entitled to a refund of all or part of the tax he had previously paid for 2008.

Petitioner's petition makes no claim that he overpaid his 2008 Federal income tax liability. Neither the case activity record printout concerning petitioner's CDP hearing nor respondent's notice of determination provides any indication that petitioner raised during that hearing the possibility that he was entitled to a refund of tax paid for 2008.

Because the postrial briefs the parties initially submitted did not address the question of our jurisdiction in a CDP case to determine and order the credit or refund of an overpayment, we requested the parties to submit supplemental briefs addressing the issue. Our request for supplemental briefs asked the parties to address, among other things, Appeals' jurisdiction to consider refund claims.

Because of its view that the present case has potential significance "in the area of taxpayer rights and procedural efficiency", the University of the District of Columbia David A. Clarke School of Law Tax Clinic moved for leave to file an amicus memorandum of law in support of petitioner. We granted the clinic's motion and filed the memorandum it had lodged with its motion.

[*7]                              Discussion

I.      Applicable Law

        A.      Relevant Statutory Provisions

Section 6511 governs the timeliness of refund claims.  Section 6511(a)

limits the time during which a taxpayer can file a claim.  Even when the taxpayer

files a claim that is timely under section 6511(a), he is entitled to a refund only of

payments made during a specified lookback period.  Under section 6511(b)(2) the

applicable lookback period turns on whether the taxpayer filed a return for the

taxable year in question and, if so, whether he received any extensions of the time

for filing that return.  If the taxpayer filed a return for the year, his refund cannot

exceed "the portion of the tax paid within the period, immediately preceding the

filing of the claim, equal to 3 years plus the period of any extension of time for

filing the return."  Sec. 6511(b)(2)(A).

Section 6214(a) gives us "jurisdiction to redetermine the correct amount of

* * * [a] deficiency" determined by the Commissioner when a taxpayer files a

timely petition for redetermination.  Section 6512(b)(1) gives us jurisdiction in a

deficiency case to determine the amount of any overpayment of income tax made

by the taxpayer for a taxable year before us (whether or not we also find a

deficiency for that year).  Any overpayment we determine under section

**[*8]** 6512(b)(1) must be refunded or credited to the taxpayer. But section 6512(b)(3) limits our jurisdiction to order a credit or refund to only that portion of a tax paid after the mailing of a notice of deficiency or in regard to which a timely claim for refund was pending (or could have been filed) on the date of mailing of the notice of deficiency.

Sections 6320 and 6330 provide a taxpayer the right to notice and the opportunity for an Appeals hearing before the Commissioner can collect unpaid taxes by means of a lien or levy against the taxpayer's property. If a taxpayer requests a CDP hearing, the Appeals officer conducting the hearing must verify that the requirements of any applicable law or administrative procedure have been met. Secs. 6320(c), 6330(c)(1). The taxpayer may raise at a hearing any relevant issue relating to the unpaid tax or the collection action, including appropriate spousal defenses, challenges to the appropriateness of collection actions, and offers of collection alternatives. See sec. 6330(c)(2)(A). The taxpayer may also raise at the hearing challenges to the existence or amount of the underlying tax liability for any period if he did not receive a statutory notice for that liability or did not otherwise have an opportunity to dispute it. See sec. 6330(c)(2)(B). Section 6330(d)(1) allows a taxpayer to petition this Court for a review of a

**[\*9]** determination made under section 6320 or 6330 and grants us jurisdiction with respect to the matter upon the timely filing of a petition.

Section 6404(e)(1)(A) allows the Secretary to abate the assessment of interest on a deficiency that is "attributable in whole or in part to any unreasonable error or delay by an officer or employee of the Internal Revenue Service * * * in performing a ministerial or managerial act". If the Secretary denies a taxpayer's claim for abatement of interest, section 6404(h) allows the taxpayer to petition this Court, within a prescribed period, to determine whether the Secretary's failure to abate interest was an abuse of discretion. Section 6404(h)(2)(B) provides that "[r]ules similar to the rules of section 6512(b)" apply for purposes of section 6404.

B.    Greene-Thapedi v. Commissioner

In Greene-Thapedi v. Commissioner, 126 T.C. 1 (2006), we considered a petition to review the Commissioner's determination to collect by levy a taxpayer's 1992 tax liability, as established by a stipulated decision in a prior deficiency proceeding. After the taxpayer filed a petition to review the Commissioner's determination to uphold the proposed levy, the Commissioner offset that liability by applying against it an overpayment for the taxpayer's 1999 taxable year. We thus accepted the Commissioner's request to dismiss the case as moot.

**[\*10]** Before dismissing the case, however, we had to address the taxpayer's claim that she was entitled to a refund of interest that had accrued before she received from the Commissioner a Form CP 504 advising her of his intent to levy on specified assets. The taxpayer's refund claim was an alternative to her argument that she was not liable at all for her 1992 deficiency or interest thereon because the Commissioner failed to assess that deficiency and mail her a timely notice and demand to pay it. We thus viewed the taxpayer's refund claim as having arisen "under section 6330(c)(2), as an outgrowth of her challenge to the existence and amount of her underlying 1992 tax liability." Id. at 8. The taxpayer's right to challenge her liability, however, arose "only in connection with her challenge to the proposed collection action." Id. Once the proposed levy became moot, we reasoned, the taxpayer's opportunity to challenge her liability vanished, and with it any right to claim a refund of any improperly accrued interest. "More fundamentally," we observed, "section 6330 does not expressly give this Court jurisdiction to determine an overpayment or to order a refund or credit of taxes paid." Id. And in the absence of explicit statutory authority, we declined to assume jurisdiction in a CDP case "either to determine an overpayment or to order a refund or credit of taxes paid". Id. at 11. We saw no indication that Congress, in enacting section 6330, "intended, sub silentio, to provide taxpayers a back-door

[*11] route to tax refunds and credits free of the[] longstanding and well-established limitations" provided in sections 6511 and 6512(b) regarding when taxpayers can claim refunds and the amounts they can claim. Greene-Thapedi v. Commissioner, 126 T.C. at 12. Moreover, "in light of the detailed and comprehensive codification of such limitations" we doubted "that Congress would have intended that such limitations should arise by inference in section 6330 with respect to claims for tax refunds or credits as to which our jurisdiction would similarly arise under section 6330, if at all, only by inference." Id. We thus concluded "that Congress did not intend section 6330 to provide for the allowance of tax refunds and credits." Id.

In a footnote to our Opinion in Greene-Thapedi v. Commissioner, 126 T.C. at 11 n.19, we allowed for the possibility that our consideration in a CDP case of the taxpayer's possible overpayment might be "necessary for a correct and complete determination of whether the proposed collection action should proceed." In a case unlike the one before us in Greene-Thapedi in which the taxpayer is entitled to challenge his underlying liability, we reasoned, "the validity of the proposed collection action might depend upon whether the taxpayer has any unpaid balance, which might implicate the question of whether the taxpayer has paid more than was owed." Id.

**[*12]** Because the refund claim of the taxpayer in <u>Greene-Thapedi</u> involved

accrued interest, we also considered the potential applicability of section 6404.

On the basis of the cross-reference in section 6404(h)(2)(B) to section 6512(b), we

determined in <u>Goettee v. Commissioner</u>, T.C. Memo. 2003-43, 2003 WL 464862

at *19, <u>aff'd</u>, 192 F. App'x 212 (4th Cir. 2006), that we have jurisdiction to

determine any overpayment that results from the abatement of interest under

section 6404(e).

The taxpayer in <u>Greene-Thapedi v. Commissioner</u>, 126 T.C. at 12 n.21, did

not "expressly assert[] any claim for interest abatement pursuant to sec. 6404."

Moreover, the record before us in that case provided no evidence that the interest

the taxpayer sought to have refunded had accrued as the result of an "unreasonable

error or delay resulting from a 'ministerial act'." <u>Id.</u> at 13 n.21. Therefore, we did

not view the taxpayer's refund claim as "being predicated on a claim for interest

abatement pursuant to section 6404." <u>Id.</u> at 12. We added:

> [E]ven if * * * [the taxpayer's] claim were so construed, that
> circumstance would not affect our conclusion that we lack
> jurisdiction under section 6330 to determine any overpayment or to
> order a refund or credit. Unlike section 6404(h), section 6330
> contains no cross-reference to the rules of section 6512(b), nor does
> section 6330 cross-reference section 6404(h)(2)(B) * * *. Section
> 6404(h)(2)(B) illustrates that Congress has acted infrequently to
> extend this Court's overpayment jurisdiction, and then only in a
> deliberate and circumscribed manner. These considerations buttress

**[\*13]** our conclusion that we should not assume overpayment jurisdiction in a section 6330(d) proceeding absent express statutory provision.

Id. at 12-13.

In a separate dissenting opinion joined by one other Judge, Judge Vasquez invoked the importance of construing remedial legislation broadly to implement its purposes and, on the basis of that principle, suggested that the Commissioner could not "unilaterally deprive the Court of jurisdiction in section 6330 cases by merely stating that he no longer intends to proceed with collection." Id. at 15, 16-17 (Vasquez, J., dissenting). Granting the Commissioner that authority, he reasoned, would frustrate "[t]he congressional intent behind the enactment of section 6330". Id. at 17 (Vasquez, J., dissenting).

Judge Vasquez also accused the majority in Greene-Thapedi of failing to acknowledge that this Court's predecessor, the Board of Tax Appeals, "decided it had overpayment jurisdiction pursuant to the Revenue Act of 1924" even though Congress had not granted the Board that jurisdiction in "explicit statutory language". Id. at 21 (Vasquez, J., dissenting). He cited four cases that, in his view, exemplified the Board's exercise of its assumed overpayment jurisdiction: Barry v. Commissioner, 1 B.T.A. 156 (1924), Hickory Spinning Co. v. Commissioner, 1 B.T.A. 409 (1925), Walker-Crim Co. v. Commissioner,

**[\*14]** 1 B.T.A. 599 (1925), and Maritime Sec. Co. v. Commissioner, 2 B.T.A. 188 (1925).

Because the taxpayer before us in Greene-Thapedi v. Commissioner, 126 T.C. at 25 (Vasquez, J., dissenting), had "properly invoked" our jurisdiction, Judge Vasquez reasoned, our failure to address the taxpayer's entitlement to an underpayment left "an essential issue unaddressed."

Finally, Judge Vasquez described the majority opinion in Greene-Thapedi as "creat[ing] a trap for the unwary." Id. at 26 (Vasquez, J., dissenting). He elaborated:

> Taxpayers who choose to litigate their section 6015 [innocent spouse] and section 6404 claims as part of a section 6330 proceeding cannot obtain decisions of an overpayment or a refund in Tax Court. If those same taxpayers had made claims for section 6015 relief or interest abatement in a non-section-6330 proceeding, we could enter a decision for an overpayment and could order a refund. * * *

Id.

II.    Analysis

The case before us requires that we revisit the issue we addressed in Greene-Thapedi:  whether we should infer jurisdiction not expressly granted to us by the applicable statutory provisions that allows us, in a CDP case brought under section 6330(d)(1), to determine and order the credit or refund of an overpayment

[*15] for any of the years in issue. Neither petitioner nor amicus has given us sufficient reason to depart from that precedent.

A.     Whether Greene-Thapedi Is Distinguishable

Petitioner attempts to differentiate challenges to the amount of a taxpayer's tax liability and those that relate to alleged failures by the Commissioner to follow the procedures required to collect that liability. He observes that the taxpayer in Greene-Thapedi had had a prior opportunity to contest before this Court her tax liability for the year in issue and that her claim for a refund of interest arose from her allegation that the Commissioner had not properly assessed the tax on which the interest accrued and timely issued to her a notice and demand for payment. On the basis of those observations, petitioner describes the refund claim of the taxpayer in Greene-Thapedi as an assertion that the Appeals officer had failed to verify under section 6330(c)(1) compliance with applicable law and administrative procedure. Therefore, our inability to consider the taxpayer's refund claim in Greene-Thapedi, in petitioner's view, does not establish that we lack jurisdiction to determine an overpayment by a taxpayer entitled to challenge his underlying liability under section 6330(c)(2)(B).

Petitioner describes as "very limited" the overpayment jurisdiction he claims that we have in CDP cases. In particular, he argues that we have such jurisdiction

[*16] "only where the underlying tax liability is at issue because of the non-receipt of a mailed" notice of deficiency. Petitioner reads section 6512(b)(3)(B) to mean that the mailing of a notice of deficiency "preserve[s] an <u>imputed refund claim</u> for the taxpayer as of the date of that mailing--a claim that is activated by a petition to Tax Court."[2] When the taxpayer does not receive the notice of deficiency, however, "he will, through no fault of his own, miss the opportunity to file a petition and activate that automatic refund claim." Thus, section 6330(c)(2)(B), which allows a taxpayer to challenge the existence or amount of his underlying tax liability in a CDP hearing when he did not receive a notice of deficiency for the year in issue, also allows the taxpayer, in petitioner's view, to raise any refund claim that would have been "activated" by a petition for redetermination filed in response to the undelivered notice of deficiency.

Because petitioner's argument rests on the mailing of a notice of deficiency not received by the taxpayer, he now accepts the premise that respondent mailed him a notice of deficiency for his 2008 taxable year--although that premise conflicts with the position he had consistently maintained before learning of his

---

[2]Sec. 6512(b)(3)(B) allows for a credit or refund of amounts paid "within the period which would be applicable under section 6511(b)(2), (c), or (d), if on the date of the mailing of the notice of deficiency a claim had been filed (whether or not filed) stating the grounds upon which the Tax Court finds that there is an overpayment".

[*17] potential overpayment for that year. In the assignment of errors in his petition, petitioner repeatedly asserted: "No Notice of Deficiency was issued to * * * [him]". In his postrial briefs, petitioner continued to challenge the validity of respondent's assessment, claiming that respondent had not established that a notice of deficiency had been mailed to him before the expiration of the period of limitations on assessment. Petitioner abandons that position in his supplemental brief, which he describes as "based on the premise that a notice of deficiency for tax year 2008 was in fact mailed".

We see no reason why the issuance of a notice of deficiency that petitioner never received should allow him to pursue a claim for refund that would otherwise have become time barred long before he manifested any awareness of it. Because respondent received petitioner's 2008 Federal income tax return on October 19, 2009, the period of limitations on a claim for refund of any of the $957 petitioner paid between December 24, 2009, and October 14, 2010, expired no later than October 19, 2012.[3] See sec. 6511(a). The period of limitations on a claim for refund of any of the $800 petitioner paid between November 29, 2010, and

_____

[3]If the envelope containing petitioner's 2008 Federal income tax return were postmarked on or before the return's due date, the return would be treated as having been filed on the date of the postmark rather than the date respondent received it. See sec. 7502(a).

**[\*18]** September 21, 2012, expired two years after the date of each payment. Respondent's issuance in August 2012 of a notice of deficiency for petitioner's 2008 taxable year (if such a notice was actually mailed)[4] in no way lulled petitioner into complacency in his pursuit of any refund claim because--as the parties agree--he never received the notice.

A taxpayer's filing with this Court of a petition for redetermination in response to a notice of deficiency effectively tolls the period of limitations on any claim for refund for a year covered by the notice because the petition cuts off the taxpayer's right to seek a refund for the year in any other forum. See sec. 6512(a). But the issuance of a notice of deficiency, by itself, does not bar the taxpayer from seeking a refund in other courts. Thus, petitioner's nonreceipt of any notice of deficiency for his 2008 taxable year did not deprive him of an opportunity to pursue a claim for a refund of any overpayment he made for that year. But petitioner manifested no awareness of the possibility that he had overpaid his 2008 Federal income tax until our call with the parties on February 21, 2018--long after the period of limitations on any refund claim had expired. We see no reason to read into section 6330(d) jurisdiction that that section does not explicitly grant us

---

[4]Respondent claims that he "mailed petitioner a statutory notice of deficiency on August 7, 2012." Petitioner accepts that date as "[t]he assumed date that the SNOD [statutory notice of deficiency] for 2008 was mailed".

**[\*19]** to give those in petitioner's situation another opportunity to pursue a refund claim in regard to which they took no action during the applicable period of limitations.[5]

Amicus' efforts to distinguish Greene-Thapedi are similar to petitioner's and also unavailing.  Like petitioner, amicus points to the receipt of a notice of deficiency by the taxpayer in Greene-Thapedi and her opportunity to contest the deficiency in this Court as factors that distinguish that case from the present one.  Unlike petitioner, however, amicus offers us no reason why that distinction should make a difference.  In particular, amicus misreads note 19 to our Opinion in Greene-Thapedi.  In that footnote, we accepted the potential relevance of a taxpayer's payment of more tax than was owed--but not because we assumed we would have jurisdiction in such a case to determine the amount of the taxpayer's overpayment and order that it be credited or refunded.  Instead, we saw the question as relevant only in that a taxpayer's overpayment would mean that he had

---

[5]Petitioner suggests that "[a]ttempting to apply § 6330 in isolation, apart from th[e] [statutory] scheme [governing the assessment of deficiencies], could lead to an absurd conclusion that when a person did not receive an SNOD, but no greater liability was assessed than that showing on his return, a challenge to his own self-assessed liability is allowed."  The absurdity of that conclusion, however, is far from self-evident.  See Montgomery v. Commissioner, 122 T.C. 1, 9 (2004) (allowing taxpayers in a CDP case to challenge the liability reported on their return).

**[\*20]** no unpaid liability and that the proposed collection action would thus be invalid. In other words, the relevant question (overpayment or not?) could be answered without the need to determine the precise amount of any overpayment. Simply determining that the taxpayer had paid more than he owed--by some amount--would mean that the Commissioner's collection action could not go forward.

> B.    Whether Greene-Thapedi Is Correct

Amicus argues that we should overrule Greene-Thapedi if we find ourselves unable to distinguish it. Most of amicus' arguments for overruling Greene-Thapedi appear in the dissenting opinion Judge Vasquez filed in that case. Having considered those arguments in issuing our Opinion in Greene-Thapedi, we might be justified in setting them aside without further explanation. Nonetheless, in response to amicus' invitation that we reconsider those arguments, we will explain why we do not view them as grounds for overruling our established precedent.

> 1.    Implementation of Congress' Remedial Purpose

First, amicus argues, as did Judge Vasquez in Greene-Thapedi, that our holding in that case is contrary to section 6330's "remedial purpose". We fail to see, however, how our holding in Greene-Thapedi that we lack jurisdiction in a CDP case to determine and order the refund or credit of an overpayment

**[*21]** undermines the objectives Congress sought to achieve in enacting the CDP provisions. The legislative history of those provisions indicates that Congress enacted them to "insure due process" in the use by the Internal Revenue Service of its authority to collect taxes by means of liens and levies. See generally S. Rept. No. 105-174, at 67-68 (1998), 1998-3 C.B. at 537, 603-604. Respondent concedes that petitioner is entitled to abatement of his 2008 Federal income tax liability and the release of the lien to collect that liability. That concession ensures that respondent will not use his collection authority in a manner that violates petitioner's rights, and thus it fully satisfies the purpose of the CDP provisions. Nothing in the relevant legislative history of those provisions suggests that their purpose extends to protecting taxpayers from the consequences of their failure to pursue refund claims timely.

Petitioner and amicus both invoke our observation in Montgomery v. Commissioner, 122 T.C. 1, 10 (2004), that "the substantive and procedural protections contained in sections 6320 and 6330 reflect congressional intent that the Commissioner should collect the correct amount of tax". If respondent ends up having collected too much tax from petitioner for 2008, however, it will not be because of respondent's misuse of his collection authority but instead because of

**[*22]** petitioner's failure to realize in time that documents in his possession established his entitlement to deductions in excess of those he claimed on his return.

### 2. Need for Resolution of Continuing Controversy

Amicus suggests that petitioner's appeal of respondent's determination to sustain the NFTL for his 2006 and 2008 taxable years vests us with jurisdiction to resolve the parties' "entire controversy". Amicus reasons that the parties' disagreement over whether we have jurisdiction to consider petitioner's claim for a refund of any overpayment he made for his 2008 taxable year means that we have jurisdiction to resolve that disagreement. Amicus explains:

> [A]lthough Respondent has conceded to petitioner's substantiations of deductions for the tax year at issue, Respondent's concession should have no bearing on this court's jurisdiction because there remains a controversy between the parties which this Court must address. * * * Petitioner believes that he has made an overpayment of his income tax and is entitled to a refund of this amount. Respondent argues that, even if there is admittedly now an overpayment, the Tax Court lacks jurisdiction to decide the overpayment in a collection review proceeding. It follows that there remains a controversy which this Court should address, its jurisdiction having been properly invoked pursuant to [section] 6330(d)(1).

We readily agree that "[w]e have jurisdiction to determine our jurisdiction."

Buczek v. Commissioner, 143 T.C. 301, 307 (2014). But accepting that we have

[*23] jurisdiction to answer the question of whether we can determine an overpayment in a CDP case does not dictate an affirmative answer to that question.[6]

### 3.    Precedent for Imputing Jurisdiction

Amicus also repeats Judge Vasquez's claim in Greene-Thapedi that our predecessor, the Board of Tax Appeals, assumed overpayment jurisdiction under the Revenue Act of 1924 that the statute did not expressly grant it.  Amicus urges us to follow our predecessor's example and "assume that * * * [we have] overpayment jurisdiction in collection review proceedings".

In the cases to which amicus refers--the same cases to which Judge Vasquez referred in his dissent in Greene-Thapedi--the Board determined overpayments not for the purpose of ordering a credit or refund but instead as a necessary step in

---

[6]In Naftel v. Commissioner, 85 T.C. 527, 530 (1985), on which amicus relies, we wrote that "generally, once a petitioner invokes the jurisdiction of the Court, jurisdiction lies with the Court and remains unimpaired until the Court has decided the controversy."  We determined that we had jurisdiction in Naftel to resolve a dispute about whether the taxpayer had received refund checks the Commissioner had issued.  But we did so because resolution of that dispute fell within our express statutory jurisdiction to redetermine deficiencies and determine the existence and amount of any overpayments.  As we explained:  "When we are presented with a case over which we have jurisdiction and in which we possess the necessary and usual powers to resolve the dispute, we must consider all the issues raised by the case."  Id. at 535.  Thus, Naftel does not establish that we must address disputes whose resolution is outside our "necessary and usual powers".

[*24] redetermining the taxpayers' deficiencies for the years before it. The revenue acts governing those cases required that a taxpayer's deficiency for a given year be reduced by any overpayments made in prior years. Thus, for example, in <u>Barry</u>, the Commissioner reduced the deficiency he determined for the taxpayer's 1921 taxable year by the overassessment he determined for 1920. The taxpayer claimed that the amount by which he was overassessed for 1920 was greater than the amount the Commissioner allowed. The Board rejected the Commissioner's contention that its jurisdiction covered only the taxpayer's 1921 taxable year and that it could not determine the amount of the taxpayer's overassessment for 1920. In the Board's view, the exercise of its jurisdiction to determine the proper deficiency for 1921 required a determination of the amount of any overpayment for 1920. Thus, the Board did not assume jurisdiction beyond that expressly granted to it. Instead, it simply undertook those determinations necessary for the effective exercise of its statutorily defined jurisdiction. <u>See</u> <u>Barry v. Commissioner</u>, 1 B.T.A. at 158 ("We think it was clearly the intention of Congress in creating the Board that, on appeals by taxpayers, we should consider every question necessary to a correct and complete determination of any deficiency which the Commissioner proposes to assess.").

**[\*25]** Cases like <u>Barry</u> thus do not establish a precedent for our arrogation of authority beyond what Congress expressly granted to us.  In particular, they do not support our assuming jurisdiction in a CDP case to determine and order the credit or refund of any overpayment the taxpayer may have made for the years in issue. In contrast to the situation the Board addressed in <u>Barry</u> and similar cases, our determination of an overpayment in a CDP case is not a required element of our statutorily defined jurisdiction.

If Appeals had the authority to consider refund claims and its determination in a particular case included the denial of a taxpayer's refund claim, our consideration of that claim might be an element of our review of Appeals' determination under section 6330(d)(1).  <u>Cf.</u> <u>Wright v. Commissioner</u>, 571 F.3d 215 (2d Cir. 2009) (treating a taxpayer's petition under section 6330(d)(1) as invoking our jurisdiction to review Appeals' failure to abate interest and determine any overpayment of interest because the taxpayer had raised the interest abatement issue in his CDP hearing), <u>vacating in part</u> T.C. Memo. 2006-273.[7]  In his supplemental brief, petitioner cites a delegation order that grants Appeals the authority provided in section 7121 to enter into closing agreements.  <u>See</u> Internal

---

[7]We discuss <u>infra</u> part II.B.4 the implications for the present case of <u>Wright v. Commissioner</u>, 571 F.3d 215 (2d Cir. 2009), <u>vacating in part</u> T.C. Memo. 2006-273.

[*26] Revenue Manual pt. 1.2.47.4 (Aug. 18, 1997).  Because section 7121(b)(2) refers to credits and refunds, petitioner reasons that "Congress has thus given Appeals, through the Secretary's delegation, broad-based authority to enter into agreements extending even [to] refunds and credits."[8]  Petitioner misreads the delegation order.  That Appeals can enter into closing agreements and closing agreements can result in refunds or credits does not establish that Appeals has the authority to order refunds or credits--particularly those barred by the statute of limitations.  Therefore, even if petitioner had advanced his refund claim before Appeals, reviewing Appeals' failure to consider that claim would not be a necessary element of our review of Appeals' determination under section 6330(d)(1).

Amicus also claims that our jurisdiction to consider refunds in innocent spouse cases brought under section 6015(e) lacks explicit statutory foundation.  We disagree.  When an individual to whom the Commissioner denies relief under section 6015 from joint and several liability petitions this Court for review of the

---

[8]Sec. 7121(a) authorizes the Secretary to enter into agreements concerning a taxpayer's tax liability.  Sec. 7121(b) concerns the finality of those agreements and provides in para. (2) that, as a general rule, "in any suit, action, or proceeding, * * * [a closing] agreement, or any determination, assessment, collection, payment, abatement, refund, or credit made in accordance therewith, shall not be annulled, modified, set aside, or disregarded."

**[*27]** Commissioner's determination, section 6015(e)(1)(A) gives us jurisdiction "to determine the appropriate relief available to the individual under * * * [that] section". And section 6015(g)(1) expressly authorizes credits or refunds (to the extent not time barred) as part of the appropriate relief.[9]

4.      Potential Concurrent Jurisdiction Under Multiple Code Sections

Wright illustrates that petitions ostensibly filed under section 6330(d)(1) can give us jurisdiction to determine and order the refund or credit of an overpayment when the petition includes a claim for interest abatement. Wright involved the Commissioner's effort to collect a taxpayer's tax liabilities for 1987 and 1989. The taxpayer had received a notice of deficiency for those years and petitioned this Court for redetermination of the deficiencies. See Wright v.

---

[9]Amicus observes that sec. 6015(g) includes no express statement that sec. 6512(b) applies in an innocent spouse case. Instead, sec. 6015(g)(1) requires the allowance of a credit or making of a refund to the extent attributable to the application of sec. 6015 "[n]othwithstanding any other law or rule of law" other than specified sections including secs. 6511 and 6512(b). Thus, sec. 6015(g) assumes that secs. 6511 and 6512(b) apply simply because their application is not expressly negated. But the exclusion of secs. 6511 and 6512(b) from those provisions that cannot override sec. 6015(g) does not establish our overpayment jurisdiction in an innocent spouse case. Instead, it simply ensures that claims to refunds or credits under sec. 6015(g) are subject to the same limitations as claims made on grounds other than relief from joint and several liability. (If sec. 6015(g)(1) made no mention of secs. 6511 and 6512(b), we could award credits or refunds in innocent spouse cases without regard to when the taxpayer paid the amounts in issue.)

[*28] Commissioner, T.C. Memo. 1998-224, aff'd without published opinion, 173 F.3d 848 (2d Cir. 1999). Although the taxpayer was therefore barred from contesting his underlying liability in his subsequent CDP case, he sought the abatement of interest that had accrued on that liability because of the Commissioner's failure to apply a refund due him for 1993 to reduce his liabilities for the years in issue without notifying him of that failure. Although we agreed with the taxpayer that he was entitled to additional interest abatement beyond what the Commissioner had allowed, we did not consider his claim that he was also entitled to a refund of interest already paid. Citing Greene-Thapedi, we noted that we "lack[ed] jurisdiction to determine whether an overpayment exists or to order a refund or credit for 1989 to the extent that the amount of the abatement of interest exceeds the amount remaining unpaid for 1989." Wright v. Commissioner, T.C. Memo. 2006-273, 2006 WL 3782718, at *6. On appeal, the Court of Appeals for the Second Circuit disagreed with our conclusion regarding the scope of our jurisdiction:

> Since Wright properly raised the issue [of interest abatement] at the agency, it follows that the subsequent Notice of Determination-- which did not grant Wright an abatement--was "the Secretary's final determination not to abate interest" under § 6404(h)(1). And because Wright appealed the Notice of Determination to the Tax Court within the time period required by § 6404(h)(1), the Tax Court had juris- diction to determine whether Wright was entitled to an abatement,

[*29] and if he was, whether he made an overpayment and is entitled to a
refund.

Wright v. Commissioner, 571 F.3d at 220.

The opinion of the Court of Appeals in Wright does not call into question
Greene-Thapedi's central holding that a petition filed under section 6330(d)(1)
does not give us jurisdiction to determine and order the credit or refund of an
overpayment for any of the taxable years in issue. Wright rests on the proposition
(which, as explained below, we have since accepted) that a petition ostensibly
filed under section 6330(d)(1) can also be viewed as having been filed under
section 6404(h)(1) if the taxpayer had raised the issue of interest abatement in his
CDP hearing. By contrast, because the taxpayer in Greene-Thapedi made no claim
of entitlement to interest abatement under section 6404(e), and the record provided
no evidence that she was so entitled, we did not view her claim as predicated on
section 6404.

Although amicus accepts that Wright may be "distinguishable on several
grounds", it suggests that the Court of Appeals opinion in that case warns against a
crabbed interpretation of the scope of our jurisdiction in CDP cases. We have
already heeded that warning. In Gray v. Commissioner, 138 T.C. 295 (2012), we
accepted that a petition ostensibly filed under section 6330 that includes a claim

[*30] for interest abatement can be treated as having been filed as well under section 6404. Citing the Court of Appeals opinion in Wright with approval, we explained: "Because * * * [the taxpayer] requested an abatement of interest in connection with her section 6330 hearing, the notice of determination included a determination not to abate interest under section 6404(e), and the petition seeks our review of that determination, we conclude that the notice and petition confer jurisdiction under section 6404(h) that is independent of section 6330." Id. at 305. Although the issue at hand was the timeliness of the taxpayer's petition, which was filed too late for review under section 6330(d)(1) but would have been timely as a petition under section 6404(h), our conclusion that the petition gave us jurisdiction under section 6404(h) suggests that we could have considered under section 6404(h)(2)(B) any claim for refund resulting from the abatement of interest. See King v. Commissioner, T.C. Memo. 2015-36, rev'd, 829 F.3d 795 (7th Cir. 2016). In King, we followed Gray and concluded, in the exercise of our jurisdiction under section 6404(h), that the Commissioner had abused his discretion in not abating interest we viewed as "excessive" within the meaning of section 6404(a)(1).[10]

---

[10]Because the interest at issue in King v. Commissioner, T.C. Memo. 2015-36, rev'd, 829 F.3d 795 (7th Cir. 2016), related to employment taxes, it could not be abated under sec. 6404(e). See Woodral v. Commissioner, 112 T.C. 19, 25 (1999); Scanlon White, Inc. v. Commissioner, T.C. Memo. 2005-282, aff'd, 472

(continued...)

**[*31]** Because the taxpayer had paid the interest (along with taxes, penalties, and additions to tax) after the Commissioner's determination to sustain a notice of Federal tax lien, our conclusion was tantamount to the determination of an overpayment. Although the Court of Appeals for the Seventh Circuit reversed our decision in <u>King</u>, it did so not because it disagreed with our exercise of jurisdiction to review the Commissioner's failure to abate interest. Instead, the court concluded that we had applied the wrong standard in determining when interest is "excessive" within the meaning of section 6404(a)(1).

Our acceptance of the views expressed by the Court of Appeals in <u>Wright</u> is of no help to petitioner. Again, the Court of Appeals' opinion in <u>Wright</u> does not conflict with <u>Greene-Thapedi</u>'s central holding that section 6330(d)(1) does not give us overpayment jurisdiction. Instead, the principle underlying <u>Wright</u> calls into question only the view we expressed in dicta in <u>Greene-Thapedi</u> that, even if the taxpayer's refund claim had been grounded in section 6404, we would still have concluded that we lacked jurisdiction to determine and order the credit or

---

[10](...continued)
F.3d 1173 (10th Cir. 2006); <u>Miller v. Commissioner</u>, T.C. Memo. 2000-196, <u>aff'd</u>, 310 F.3d 640 (9th Cir. 2002); <u>see also</u> sec. 301.6404-2(a), Proced. & Admin. Regs. The general abatement provision of sec. 6404(a), however, authorizes the Secretary to abate "the unpaid portion of the assessment of any tax or any liability in respect thereof" if, among other things, the assessment "is excessive in amount". <u>See</u> sec. 6404(a)(1).

[*32] refund of any overpayment resulting from the abatement of interest. Because a claim for interest abatement made in connection with a CDP hearing gives us jurisdiction under section 6404(h) that is independent of our jurisdiction under section 6330, it follows that, in our review of a notice of determination denying abatement, we can consider any claim by the taxpayer that the abatement requested would result in an overpayment that should be refunded to the taxpayer or credited to his account.

The refund petitioner seeks, however, is not grounded in a claim for abatement of interest. And, more generally, on the facts before us, we cannot view the petition filed in this case as one filed not only under section 6330(d)(1) but also under another provision that would give us overpayment jurisdiction. In particular, we cannot accept the petition as one for redetermination of the deficiency in petitioner's 2008 Federal income tax that would provide us with ancillary overpayment jurisdiction under section 6512(b)(1). Petitioner's supplemental brief posits that respondent mailed him a notice of deficiency for his 2008 taxable year on August 7, 2012. On that premise, a petition for redetermination of that deficiency would have been timely under section 6213(a) only if filed by November 5, 2012--a date that preceded by almost nine months the issuance of the notice of determination in response to which petitioner filed his

[*33] petition. (Moreover, neither in that petition nor, as far as the record discloses, in his CDP hearing did petitioner claim that he had overpaid his 2008 Federal income tax liability.)

### 5. Disparate Treatment of Innocent Spouse Claims

Amicus also repeats Judge Vasquez's argument that our declining to exercise jurisdiction in a CDP case to determine and require the refund or credit of an overpayment would result in disparate treatment of innocent spouse claims depending on whether they were brought as stand-alone claims under section 6015 or instead as defenses in CDP cases. Although the taxpayer in Greene-Thapedi, like petitioner, did not raise a spousal defense under section 6330(c)(2)(A), amicus reasons that, if Greene-Thapedi were pushed "to its logical conclusions", it would preclude us from considering in a CDP case a claim for refund grounded in a valid spousal defense. That may be so. But cases following Greene-Thapedi have read it more narrowly.

Instead of accepting that we cannot exercise in a CDP case overpayment jurisdiction grounded in a provision other than section 6330(d)(1), we have concluded that a petition ostensibly filed under that section can be viewed as giving independent jurisdiction under another provision that may provide us with the authority to consider overpayment claims. Although Gray and King involved

[*34] interest abatement rather than innocent spouse relief, we see no reason why the rationale of those cases would not extend to a claim for refund made under section 6330(c)(2)(A)(i) in connection with a CDP hearing that would give us authority under section 6015(g) to order a credit or refund as part of the "appropriate relief" to a taxpayer who successfully establishes a spousal defense. In that case, amicus' concerns about the potential disparate treatment of stand-alone innocent spouse claims and those made in CDP cases would prove unfounded.

Even if amicus' premise were correct, the resulting disparate treatment of innocent spouse claims depending on their jurisdictional posture would be required by the applicable statutory provisions. Section 6330(c)(2)(A)(i) allows for the raising of "appropriate spousal defenses" when "relevant * * * to the unpaid tax or the proposed levy". In contrast to section 6015(g), section 6330(c) provides no express basis for a taxpayer to claim (or for Appeals to consider) a taxpayer's claim for a refund arising from a grant of relief from joint and several liability. Such a claim could be considered only if the taxpayer's request for a CDP hearing and petition to this Court for review of a notice of determination denying the requested relief could be viewed as grounded in section 6015 as well as section 6330. Cf. Gray v. Commissioner, 138 T.C. at 305.

**[*35]**      6.      <u>Plain Language of Section 6512(b)(1)</u>

Amicus argues that "[t]he plain language of section 6512(b)(1) authorizes the Court to determine the existence of a deficiency or an overpayment in all cases other than small tax proceedings brought under section 7463, so long as the requirements of section 6512(b)(3)(A), (B), or (C) are met." <u>Cf.</u> <u>Greene-Thapedi v. Commissioner</u>, 126 T.C. at 26 (Vasquez, J., dissenting) ("Congress added section 6512(b)(2) to the Code, giving us authority to order a refund of <u>any</u> overpayment.").  We disagree.  Section 6512(b)(1) gives us jurisdiction to determine an overpayment in a case in which we also determine the existence of a deficiency.  It provides, in pertinent part:

> [I]f the Tax Court finds that there is no deficiency and further finds that the taxpayer has made an overpayment of income tax for the same taxable year * * * in respect of which the Secretary determined the deficiency, or finds that there is a deficiency but that the taxpayer has made an overpayment of such tax, the Tax Court shall have jurisdiction to determine the amount of such overpayment, and such amount shall, when the decision of the Tax Court has become final, be credited or refunded to the taxpayer.  * * *

Thus, the plain terms of section 6512(b)(1) indicate that our jurisdiction to determine overpayments is ancillary to the jurisdiction granted us by section 6214(a) to redetermine deficiencies.  Moreover, the limitations on our jurisdiction to order a credit or refund of an overpayment provided in section 6512(b)(3) are

[*36] based in part on the date of mailing of a notice of deficiency, which we take as further indication that our overpayment jurisdiction under section 6512(b)(1) is ancillary to our deficiency jurisdiction. We therefore reject amicus' argument that section 6512(b)(1), by its plain terms, grants us jurisdiction in this CDP case to determine and order a credit or refund of any overpayment petitioner might have made in his Federal income tax for 2008.

### 7. Petitioner's Due Process Claim

Petitioner does not explicitly ask us to overrule Greene-Thapedi, but he implicitly criticizes our failure to exercise overpayment jurisdiction in that case when he suggests that respondent's retention of an acknowledged overpayment would violate due process. According to petitioner: "Where a tax is not owed, but the payment thereof (the overpayment) is retained by Respondent, the question arises whether that overpayment, the property of the taxpayer, has been taken from him without due process, in violation of the Fifth Amendment to the Constitution." Whenever the statute of limitations bars a taxpayer from pursuing a claim for refund, however, it will result in the Commissioner's retention of an overpayment of tax. That result cannot be viewed as violating the taxpayer's due process rights because his loss of any refund to which he might have been entitled would arise from his own failure to claim the refund timely. Moreover, most of the payments

**[*37]** that petitioner now seeks to have refunded to him were voluntary payments of the tax he reported on his 2008 Federal income tax return. We fail to see how our decision not to assume jurisdiction to consider a refund claim of which petitioner manifested no awareness before the expiration of the applicable period of limitations would result in an unconstitutional violation of his due process rights.

       8.    <u>Inferences Drawn in Greene-Thapedi From the Absence in Section 6330 of a Cross-Reference to Section 6404(h)(2)(B) or 6512(b)</u>

Petitioner also claims that the inferences we drew in <u>Greene-Thapedi</u> from the absence in section 6330 of a cross-reference to section 6404(h)(2)(B) or 6512(b) "trespasses the provision at § 7806". Section 7806(a) provides: "The cross references in this title to other portions of the title, or other provisions of law, where the word 'see' is used, are made only for convenience, and shall be given no legal effect." Nothing in section 7806(a) precludes the drawing of inferences from the absence of cross-references (such as the one provided in section 6404(h)(2)(B)) that do not use the word "see" and thus have operative effect.

**[*38]** C.     Conclusion

The notice of determination that petitioner asked us to review sustained an NFTL concerning respondent's efforts to collect amounts petitioner allegedly owed for his taxable years 2006 and 2008.  Petitioner's petition assigned no error in regard to his 2006 taxable year, and in his supplemental brief he "concedes sustaining the lien for that year is appropriate."  Respondent concedes that petitioner is entitled to "abatement of * * * [his] 2008 liability and subsequent release of the lien on the 2008 tax year".  For the reasons explained above, we have no jurisdiction to consider petitioner's claim that he has overpaid his 2008 Federal income tax.  Consequently, we will issue an order upholding the NFTL for 2006 and directing respondent to release the lien for 2008 and abate his assessment of tax against petitioner for that year as appropriate to reflect his concessions regarding petitioner's substantiation of deductions related to his contracting business.

An appropriate order and decision

will be entered.