T.C. Memo. 2021-70

UNITED STATES TAX COURT

KANNARKAT P. VERGHESE, DECEASED, ANNIE P. VERGHESE,
PERSONAL REPRESENTATIVE, AND ANNIE P. VERGHESE, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 25757-15L.

Filed June 7, 2021.

In 1997 and 1998 Ps held investments in partnerships that, unbeknownst to Ps, reported fraudulent charitable contributions on their partnership tax returns. The partnerships were subject to the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"). On their returns for 1997 and 1998, Ps claimed charitable contribution deductions consistent with the partnership returns. The IRS audited the partnership returns and disallowed the charitable contribution deductions for tax years 1996 through 1998. In June 2000 the partnerships commenced the first of three TEFRA proceedings in the Tax Court that were ultimately consolidated for resolution.

Ps' investments in the partnerships had been actively solicited by promoters of the partnerships who were criminally prosecuted and ultimately convicted of crimes of fraud involving the partnerships, but the criminal prosecutions did not end until 2009. During these criminal proceedings, the TEFRA proceedings in the Tax Court were delayed after the parties to the TEFRA proceedings jointly moved for

**Served 06/07/21**

**[*2]** continuances.  The TEFRA proceedings did not conclude until April 2013 when the Tax Court entered stipulated decisions under Tax Court Rule 248(b).

In May 2014 Ps received IRS Notices CP22E showing increases in income tax and interest for tax years 1996 through 1998.  Ps thereafter filed Form 843, "Claim for Refund and Request for Abatement", requesting abatement of the interest for the years during which the TEFRA litigation was pending.  Their claim was based on allegations of unfairness and unreasonable delay by the IRS.  Ps did not receive any response from the IRS regarding their abatement request before the IRS issued a notice of intent to levy based on the liabilities assessed for tax years 1996 through 1998.  Ps requested a Collection Due Process ("CDP") hearing before the IRS Office of Appeals ("Appeals") and asserted their abatement request in the context of the CDP hearing.  Appeals erroneously determined that the abatement request could not be considered and issued a notice of determination denying abatement.  Ps timely petitioned the Tax Court with respect to tax years 1997 and 1998, and the Tax Court subsequently remanded Ps' claim to Appeals for supplemental proceedings for consideration of Ps' abatement request.  Appeals again denied Ps' request for abatement, determining that I.R.C. sec. 6404 did not permit abatement under any of the circumstances Ps alleged.

R moved for summary judgment, arguing that the notice of determination should be sustained because none of the grounds for abatement that Ps allege is valid under I.R.C. sec. 6404.  Ps contend that under I.R.C. sec. 6404(a) they are entitled to abatement on the basis of principles of fairness and that under I.R.C. sec. 6404(e) the IRS engaged in ministerial or managerial acts that constituted unreasonable delay for which their abatement request should be granted.

**[*3]**      Held:  I.R.C. sec. 6404(b) precludes a claim under I.R.C. sec. 6404(a) for abatement of interest on income tax.  Because Ps' request for abatement is for interest assessed on income tax, I.R.C. sec. 6404(a) is inapplicable.

Held, further, with the exception of one period of approximately five months, the administrative record shows that Appeals did not abuse its discretion when it determined that there was no ministerial or managerial act by the IRS sufficient to constitute unreasonable delay justifying abatement under I.R.C. sec. 6404(e).  R's motion for summary judgment will be granted in large part but, as to that five-month period, will be denied in part.

Gerald W. Kelly, Jr., and Daniel S. Heller, for petitioners.

Bartholomew Cirenza and Ryan Z. Sarazin, for respondent.

MEMORANDUM OPINION

GUSTAFSON, Judge:  Petitioner Annie P. Verghese and her late husband Kannarkat P. Verghese filed this suit, pursuant to section 6330(d),[1] in response to the determination of the Office of Appeals ("Appeals") of the Internal Revenue

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code (26 U.S.C.; "the Code") in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.  All monetary amounts are rounded to the nearest dollar.  We refer to Mr. and Mrs. Verghese as "petitioners" although Mr. Verghese has been substituted for this case by his estate, with Mrs. Verghese as its representative.

**[\*4]** Service ("IRS") to (a) sustain the issuance to petitioners of a "Final Notice - Notice of Intent to Levy" with respect to petitioners' unpaid liabilities for tax years 1997 and 1998 and (b) deny petitioners' request for abatement of almost 13 years' worth of interest that the IRS assessed in respect of the tax liabilities for those long-past years. Respondent, the Commissioner of the IRS, has moved for summary judgment under Rule 121, and petitioners have filed an opposition. For the reasons explained below, we will grant the Commissioner's motion in part as to abatement of interest under section 6404(a) and, as to abatement under section 6404(e), will grant the motion as to most of the interest but will deny it as to nearly five months' worth of interest accrued from August 7, 2012, to January 2, 2013, because, under Rule 121(e), petitioners should be allowed to conduct some discovery as to that five-month period on the issue of whether Appeals abused its discretion by failing to consider circumstances showing delay by the IRS in arriving at a settlement with the partners of certain partnerships in which Mr. Verghese was a partner.

**[*5]**                                                  Background

For purposes of the Commissioner's motion, we assume correct the facts asserted by petitioners that are supported by their filings, as well as the facts demonstrated by the Commissioner that petitioners did not dispute.[2]

The Heritage partnerships

Mr. Verghese was a partner in each of three different partnerships--Heritage Memorial Park Associates 1995-2, Heritage Memorial Park Associates 1995-3, and Heritage Memorial Park Associates 1995-4 ("the Heritage partnerships"), all of which used the partners' contributed capital to invest in cemetery plots. The Heritage partnerships donated the cemetery plots to charity and reported charitable contributions on their partnership tax returns for the amounts attributed to those plots. The charitable contributions were "passed through" to the partners of the partnerships to claim on their individual tax returns. The Heritage partnerships reported such charitable donations in 1996, 1997, and 1998, while Mr. Verghese

_____

[2]Pursuant to Fed. R. Evid. 201, we take judicial notice of the petitions and further pleadings filed in the following Tax Court cases, discussed below (and referred to herein as the "Heritage partnership cases"), which were initiated by the Heritage partnerships: Heritage Mem'l Park Assocs. 1995-2 v. Commissioner, dkt. No. 7176-00; Heritage Mem'l Park Assocs. 1995-3 v. Commissioner, dkt. No. 8260-01; and Heritage Mem'l Park Assocs. 1995-4 v. Commissioner, dkt. No. 10715-02. See Leyshon v. Commissioner, T.C. Memo. 2015-104, at *14-*15, aff'd per curiam, 649 F. App'x 299 (4th Cir. 2016).

**[*6]** was an investor and partner in the partnerships. (Deductions for 1996 are not in dispute because petitioners raised in their petition only claims relating to tax years 1997 and 1998; but we make reference below to facts relevant here concerning Heritage Memorial Park Associates 1995-2, the partnership through which deductions were claimed for 1996.)

The investments in the Heritage partnerships were actively marketed to Mr. Verghese and the other partners who made similar investments. The person responsible for much of the direct correspondence and solicitation of partner investments was Paul V. Decker, an alleged investment adviser based in Bowie, Maryland. In the years at issue, Mr. Verghese purchased partnership interests that were advertised to him as "units", which corresponded to a fixed number of cemetery sites that the partnerships purchased, allowing him to report on his personal tax returns (jointly filed with Mrs. Verghese) certain shares of the charitable contributions reported by the partnerships on their returns, for which he claimed charitable contribution deductions. He and the other partners were repeatedly assured of the legitimacy of the transactions that generated the deductions claimed by the Heritage partnerships, as well as the accuracy of the appraisals that supported them. Such assurances came in the form of repeated correspondence from Mr. Decker (often advertising the sale of additional units of

**[*7]** supposedly limited availability), as well as lengthy legal correspondence from the attorney who represented the Heritage partnerships in proceedings under the unified audit and litigation procedures of the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"). See infra p. 8, "TEFRA proceedings".

Tax returns for 1997 and 1998

Petitioners filed joint returns for tax years 1997 and 1998, on which they claimed charitable contribution deductions from their investments in the Heritage partnerships.

Civil audits of Heritage partnership returns

The IRS initiated in 1998 a civil audit of the return of Heritage Memorial Associates 1995-2 (regarding the charitable contribution deduction it reported for 1996). As of June 30, 2000, the IRS had commenced civil audits of the returns of all three of the Heritage partnerships. Petitioners assert, and we assume, that no one in the IRS ever informed them that, in connection with any tax liability that might eventually be determined against them, they could suspend the running of interest by making a "deposit in the nature of a cash bond" (discussed below in part I.B). The parties dispute whether, if they had been so informed, petitioners would have made such a deposit; but for purposes of the Commissioner's motion, we assume in their favor that they would have.

[*8] Criminal investigation

A grand jury investigation into the activities of certain persons involved in the Heritage partnerships commenced while the civil audits of the Heritage partnership returns were still pending. The investors in the partnerships were aware of the grand jury investigation of at least two of the alleged co-conspirators in June 2001. The grand jury ultimately returned criminal indictments for four alleged co-conspirators on September 29, 2005. The four co-conspirators were convicted and sentenced throughout 2007 and 2008 for crimes relating to the investigation involving the Heritage partnerships, and not until 2009 did all of the criminal proceedings ultimately conclude.

TEFRA proceedings

For the two years at issue, the civil issues proceeded to litigation as follows:[3]

The Commissioner issued a "Notice of Final Partnership Administrative Adjustment" ("FPAA") to Heritage Memorial Park Associates 1995-3 on April 11, 2001, proposing an adjustment of $2,936,700 for tax year 1997 based upon the

---

[3]As to 1996, Heritage Memorial Park Associates 1995-2 filed a petition on June 27, 2000, challenging the Commissioner's disallowance in the FPAA of a charitable contribution deduction the partnership reported for 1996 in docket No. 7176-00. Because 1996 is not at issue, we need not discuss this litigation further.

[*9] Commissioner's disallowance of a deduction claimed for a charitable contribution reported by the partnership. Heritage Memorial Park Associates 1995-3 filed a petition in the Tax Court on June 28, 2001, commencing TEFRA proceedings in docket No. 8260-01.

The Commissioner issued an FPAA to Heritage Memorial Park Associates 1995-4 on March 29, 2002, proposing an adjustment of $5,282,050 for tax year 1998 based upon the Commissioner's disallowance of a deduction claimed for a charitable contribution reported by the partnership. Heritage Memorial Park Associates 1995-4 filed a petition in the Tax Court on June 25, 2002, commencing TEFRA proceedings in docket No. 10715-02.

All of the Heritage partnerships initiated their civil TEFRA proceedings while the criminal investigation was pending and before the issuance of the criminal indictments of the four co-conspirators. Until 2008 these civil TEFRA proceedings were essentially paused while the parties therein jointly moved for continuances. The Commissioner asserts (and petitioners do not dispute) that during this period the underlying reason for the continuances was the IRS's decision to hold the civil TEFRA proceedings in abeyance until the criminal proceedings related to the activity at issue in the TEFRA litigation were concluded.

[*10] On June 27, 2008, the Commissioner moved the Tax Court to remove the tax matters partner ("TMP") in the Heritage partnership cases. Those cases were consolidated in September 2008. On February 3, 2009, a new TMP was appointed, and the cases were restored to the general docket on June 26, 2009. The Tax Court issued a notice of trial in January 2010. In June 2010 new counsel entered an appearance for the Heritage partnerships and requested a continuance of the trial. In August 2010 the Heritage partnerships moved to amend their petitions and did amend them in September 2010. Thereafter the parties engaged in discovery, and in February 2011 the Commissioner moved to dismiss certain paragraphs of the amended petitions. The parties continued to engage in discovery and to brief the issues on pending motions.

On March 2, 2012, the Heritage partnerships moved to remove the designated TMP and appoint a new TMP, which occurred on April 5, 2012. The parties filed pretrial memoranda on April 30, 2012, and a trial was set for August 7, 2012. On May 31, 2012, the Heritage partnerships filed motions for partial summary judgment, to which the Commissioner filed opposing briefs on June 29, 2012. The Heritage partnerships filed replies on July 13, 2012. The Tax Court denied the motions on July 24, 2012. On August 6, the day before the trial session, the Tax Court entered an order striking certain paragraphs of the petitions,

[*11] and the Heritage partnerships filed amended petitions.  The Tax Court held a hearing on August 7, 2012, during which the parties filed two stipulations of fact and a stipulation of settled issues; that same day the Tax Court ordered the Commissioner to file a motion for entry of decision pursuant to Rule 248(b) by October 9, 2012, with which he complied, and with regard to which the Heritage partnerships, on October 17, 2012, filed a motion to strike accompanied by a motion to enforce settlement agreement.

As he acknowledged in his motion to withdraw the pleading on November 21, 2012, the Commissioner's motion for entry of decision did not accurately represent the stipulations of fact and the resolution of issues that the parties had previously reached.  The Heritage partnerships had alleged in their motion to strike that the Commissioner had intentionally made such a filing at the direction of the IRS National Office.  On January 2, 2013, the Commissioner filed a second motion for entry of decision pursuant to Rule 248(b).  The parties made no further filings in the Tax Court in the Heritage partnership cases at issue; decisions were accordingly entered on April 1, 2013.

Increase in petitioners' tax liabilities for 1997 and 1998

On May 26, 2014, petitioners received IRS Notices CP22E showing the following:  for tax year 1997, an increase in tax of $32,389 and an increase in

[*12] interest of $47,039 (for a total amount due of $79,428); and for tax year 1998, an increase in tax of $21,536 and an increase in interest of $27,844 (for a total amount due of $49,380). The amounts due had to be paid "by June 16, 2014 to avoid additional penalty and interest charges".

Requests for abatement of interest

Petitioners filed with the IRS on September 9, 2014, Forms 843, "Claim for Refund and Request for Abatement", requesting interest abatement for each of the tax years 1996, 1997, and 1998. Each Form 843 indicated that the requested abatement was of interest assessed in respect of income tax and alleged that the reasons for the request were "[i]nterest was assessed as a result of IRS errors or delays" and "[r]easonable cause or other reason allowed under the law (other than erroneous written advice) can be shown for not assessing a penalty or addition to tax."

Line 7 of Form 843 prompts the taxpayer to "[e]xplain why you believe this claim or request should be allowed and show the computation of the amount shown" for which abatement is requested. For line 7 petitioners attached a lengthy summary alleging that they had been the victims of a fraudulent scheme and had been solicited by criminal conspirators to make what petitioners had reasonably believed were legitimate investments. Petitioners alleged that, unbeknownst to

[*13] them, "the Conspirators were fabricating and altering documents related to the tax losses" and making "a substantial profit on the sale of the properties to the Partners." Petitioners also alleged that they were "prepared and willing to pay the total tax principal owed, however, respectfully request the interest be abated."

Petitioners' submission attached to each Form 843 set forth six points of argument, which we summarize as follows: (1) Petitioners were innocent of the fraudulent scheme in which they were targeted to participate. (2) Their belief in their innocence was reasonable because of the repeated assurances they received from their investment adviser, their accountant, and the attorney for the Heritage partnerships. (3) The interest assessment (which had been accruing during more than a decade of Tax Court litigation) was significantly greater than the underlying tax liabilities and was therefore tantamount to a penalty, but petitioners' conduct (unlike that of the criminal conspirators) did not warrant punishment. (4) The TEFRA litigation involving the Heritage partnerships "began in 2000, and was not completed until 2013", "last[ing] much longer than was reasonable"; specifically, the 5-year period from 2008, when the Heritage partnerships obtained new counsel, until the conclusion of the cases in 2013 "is very indicative of unreasonable delays" because the end result was a settlement consisting of a penalty abatement rather than a decrease in liabilities. (5) Petitioners had an

[*14] otherwise "clean" history reflecting compliance with the Federal tax laws. And (6) denying interest abatement under such circumstances would violate "public policy [that] does not promote punishing victims of fraud", as well as public policy in favor of considering the decline of Mr. Verghese's mental health (as was occurring at the time) "at the very least as a mitigating factor".

Petitioners did not receive any information from the IRS regarding the disposition of their abatement requests before the IRS's initiation of collection action, which we now describe.

Notice of intent to levy

On February 12, 2015, the Commissioner issued to petitioners a "Notice of Intent to Levy and Notice of your Right to a Hearing" ("levy notice") for tax years 1997 and 1998, which instructed them to "pay immediately" and to "send * * * [the IRS] the amount due of $130,565, or we may seize (levy) your property on or after March 14, 2015." The amount due consisted of: for 1997, $74,428 owed[4] (including interest of $47,039) plus an additional $1,826 of interest and a $2,129

---

[4]Petitioners made a $5,000 payment to the IRS on August 22, 2014, after receiving the Notices CP22E. They later made an additional $5,000 payment on March 5, 2015. At the time of the hearing in this case on the Commissioner's motion for summary judgment in January 2020, counsel for the Commissioner represented in his arguments that "until approximately six months ago--* * * [petitioners] still hadn't paid the liability".

[*15] additional penalty; for 1998, $49,380 owed (including interest of $27,844)

plus an additional $1,187 of interest and a $1,615 additional penalty. Through

their representative Daniel Heller petitioners timely filed Form 12153, "Request

for a Collection Due Process or Equivalent Hearing", requesting a collection due

process ("CDP") or equivalent hearing.[5] On a typewritten attachment to their

Form 12153, petitioners argued that for purposes of section 6330(c)(3)(C) the

collection action would be more intrusive than necessary, because they "are

contesting the interest assessed against them, and intend on satisfying the tax

balance owed after their interest claim is resolved." Petitioners also attached to

the Form 12153 their previously filed Forms 843 and accompanying

documentation.

CDP hearing

On June 23, 2015, Settlement Officer Nathalie Raygosa ("SO Raygosa")

sent petitioners and Mr. Heller a letter acknowledging receipt of their request for a

CDP hearing and scheduling a telephone conference for July 21, 2015. When SO

Raygosa held the telephone conference with Mr. Heller, she indicated that she did

_____

[5]Petitioners also indicated on Form 12153 that they were seeking collection alternatives by checking boxes corresponding to "installment agreement", "offer in compromise", and "I cannot pay balance". However, petitioners are not pursuing review of Appeals' determination with respect to collection alternatives, so we do not discuss them further.

**[*16]** not think that petitioners could raise the issue of interest abatement because she believed that they had had a prior opportunity to do so. SO Raygosa reviewed additional information and legal argument that Mr. Heller provided and discussed the issue with him again on August 13 and August 20; but Appeals thereafter issued a "Notice of Determination Concerning Collection Action(s) Under section 6320 and/or 6330 of the Internal Revenue Code" on September 11, 2015, sustaining the levy action and concluding that she could not consider petitioners' interest abatement request.

Tax Court petition

Petitioners timely petitioned the Tax Court on October 13, 2015, for review of the notice of determination. When they filed the petition, petitioners resided in Maryland. On June 6, 2016, the Commissioner filed a motion for remand on the grounds that SO Raygosa had erred in determining that petitioners had had a prior opportunity to litigate the issue of interest abatement. The Court granted the motion and remanded the case to Appeals on June 7, 2016. On remand an IRS general attorney advised the Appeals team manager that--

> The primary issue raised by petitioners is interest abatement pursuant to * * * [section] 6404(e). The IRS moved to remand the case because [the] Settlement Officer assigned to petitioner's initial CDP Hearing incorrectly determined that petitioners had a prior

[*17] opportunity to raise the interest abatement issue by virtue of various partnership-level Tax Court cases.

> The supplemental CDP hearing should address petitioner's claim for interest abatement on the merits. You should allow petitioners to submit whatever documentation and testimony they believe is relevant to the interest abatement issue. Your supplemental notice of determination should indicate whether petitioners properly raised the interest abatement issue in their supplemental hearing, and if so, whether you agreed to abate any portion of the interest assessed by respondent.

The memorandum further set a deadline of August 16, 2016, by which to conduct the administrative hearing.

Supplemental CDP hearing

On remand the case was assigned to SO Edwards, who contacted Mr. Heller on July 21, 2016, by telephone and followed up with a letter indicating that his understanding of "the purpose of the remand is to review whether interest abatement is appropriate for tax years 1997 and 1998". SO Edwards also indicated that he needed certain documents missing from the administrative file, including "proof of unreasonable delays by the IRS referenced in your Form 843 claims", and scheduled a telephone conference for August 16, 2016, to discuss interest abatement.

On August 3, 2016, SO Edwards received and thereafter considered documents from Mr. Heller in support of the interest abatement claims for 1997

**[*18]** and 1998. He also examined the legal authorities submitted in support of Mr. Heller's arguments regarding the availability to petitioners of an abatement claim under section 6404(a)--i.e., the cases H. & H. Trim & Upholstery Co. v. Commissioner, T.C. Memo. 2003-9, and King v. Commissioner, T.C. Memo. 2015-36, rev'd, 829 F.3d 795 (7th Cir. 2016).[6] Moreover, SO Edwards discussed the merits of these legal authorities with IRS counsel and with Mr. Heller during the scheduled telephone conference.

During SO Edwards's review in consideration of Mr. Heller's interest abatement argument under section 6404(e), he conducted additional research regarding what factors contributed to the delay between the Heritage partnerships' commencing TEFRA litigation and the conclusion of those cases. In his initial conversations with IRS counsel on July 20, 2016, SO Edwards noted: "I discussed notes from the trial * * * that may be needed because of arguments raised by

---

[6]Mr. Heller noted in his correspondence to SO Edwards (and we agree) that the Court of Appeals for the Seventh Circuit's reversal of King v. Commissioner, T.C. Memo. 2015-36, rev'd, 829 F.3d 795 (7th Cir. 2016), is not binding authority on this Court where, as here, the case is appealable to the Court of Appeals for the Fourth Circuit. See sec. 7482(b); see also Lardas v. Commissioner, 99 T.C. 490, 495 (1992) (explaining Golsen v. Commissioner, 54 T.C. 742 (1970), aff'd, 445 F.2d 985 (10th Cir. 1971), and stating "[i]t should be emphasized that the logic behind the Golsen doctrine is not that we lack the authority to render a decision inconsistent with any Court of Appeals (including the one to which an appeal would lie), but that it would be futile and wasteful to do so where we would surely be reversed").

**[*19]** taxpayers [sic] counsel * * * [that] delays in the trial were due to IRS.  How can I evaluate that claim without court docs?".

SO Edwards held the telephone conference with Mr. Heller on August 16, 2016, during which they discussed the two distinct grounds raised for interest abatement--"i.e., unreasonable delays and excessive [interest]".  SO Edwards pointed out that "excessive doesn't mean there shouldn't be any interest charged" and raised the subject of partial abatement, to which Mr. Heller responded that "he would need to first see how much * * * [SO Edwards] would be willing to abate".  In correspondence and documents submitted before the telephone conference, Mr. Heller did not identify to SO Edwards any discrete periods of time that allegedly constituted the "unreasonable delay" by the IRS other than the generally long duration of the TEFRA litigation, specifically the period from 2008 through 2013 during which the Heritage partnerships tried to obtain a settlement.

At the end of the telephone conference, Mr. Heller indicated that he would like a face-to-face meeting, and SO Edwards said he would be willing to discuss the case in person upon completion of his review.  SO Edwards' case notes further indicate his "plan of action:  [c]omplete review of excessive and unreasonable delays".

[*20] SO Edwards paused his work on the case until January 9, 2017, the date on which his notes begin with the statement that "[t]he case was delayed due to another remand case, tax court testimony and other priority cases". On that day he again reviewed Mr. Heller's arguments that: (1) the interest was excessive because of the "unfair" circumstance that petitioners were the victims of a calculated fraud; (2) petitioners did not know (because the IRS did not tell them) that they could post a deposit in the nature of a cash bond which would have stopped the interest from accruing; and (3) delays by the IRS caused the TEFRA litigation to remain unresolved until 2013 (thereby prolonging the accrual of interest). On the issue of the IRS's delay, SO Edwards reviewed the docket entries to ascertain "if there were delays and who prompted them"; he then telephoned the IRS attorney who served as counsel for the Commissioner in the TEFRA litigation. The IRS attorney told him that there were 12 continuances of the litigation, some of which were joint motions and all of which were prompted by the criminal cases against the promoters of the Heritage partnerships, and that the Department of Justice did not want them to move forward with the cases while the criminal actions were pending.

[*21] On February 16, 2017, SO Edwards reviewed the IRS attorney's TEFRA litigation files,[7] which were consistent with the attorney's recollection of the cases and, further, showed that the criminal cases did not conclude until 2009. SO Edwards also noted that in 2010 the Heritage partnerships obtained new counsel who filed a motion for partial summary judgment on an issue related to allowable expenses, which was ultimately denied in 2012. SO Edwards reviewed Internal Revenue Manual (IRM) pt. 8.7.7.13 (May 15, 2012) ("Abatement of Interest Claims") and determined that there were no facts present corresponding to the criteria for the abatement of interest either during the pendency of the criminal case, when "the IRS couldn't pursue the civil matter", or after the criminal matter concluded and "there was an ongoing trial with new counsel * * * fighting for additional expenses" until the motion for partial summary judgment was denied in late July 2012.

SO Edwards spoke with Mr. Heller on March 23, 2017, and advised him of his conclusions that "interest abatement is not applicable based on the facts and circumstances of the case" and explained his conclusions. Mr. Heller again requested a face-to-face meeting; but SO Edwards said he did not understand what

---

[7]The IRS attorney's TEFRA litigation files have not been submitted as part of the administrative record in this CDP case.

[*22] purpose a face-to-face meeting would serve, and he indicated he would need to review the order on remand and speak to an IRS attorney to confirm.  Later that day he called Mr. Heller back and left a message offering times for a face-to-face meeting.  On March 27, 2017, Mr. Heller sent SO Edwards a fax stating in relevant part that "you have made it abundantly clear that even if you were to humor this meeting, it would serve no purpose for the Taxpayers, we do not believe it would be prudent or advisable for our office to engage in this meeting with you at this time".

On June 14, 2017, Appeals issued to petitioners a "Supplemental Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330" for tax years 1997 and 1998, sustaining Appeals' denial of  petitioners' request for abatement of interest and consequently sustaining the Levy Notice.  In the supplemental notice of determination SO Edwards listed the requirements of applicable law and administrative procedure that he verified had been met.  On the issue of interest abatement, he ultimately concluded that "the cases [that petitioners] cited were not applicable to the facts in the Taxpayers' case and therefore [he] determined the interest is not excessive" under section 6404(a).  He arrived at this conclusion because he reasoned that in the cases provided on this issue, "the fairness test as it relates to excessiveness is a but for test", meaning that

[*23] the interest was not excessive (or unfair) unless "but for" reliance on advice that the IRS gave that was erroneous, the delay would not have occurred. SO Edwards concluded that the IRS's conduct in this case did not fulfill that criterion.

SO Edwards further observed that section 6404(e) "allows for the abatement of interest on any deficiency attributable in whole or in part to any unreasonable error or delay by an officer or employee of the Internal Revenue Service (acting in his official capacity) in performing a ministerial or managerial act" and that, upon his review of the Heritage partnership cases, he believed that the continuances due to the pending criminal matters were not unreasonable, that many were in fact "joint in nature", and that, "once the criminal matters were concluded and a new * * * [TMP] found, the Tax Court case resumed". Accordingly, he concluded that the statutory criteria for abatement under section 6404(e) were not met.

The supplemental notice of determination addressed petitioners' remaining arguments for abatement and determined them to be without merit: SO Edwards determined that petitioners' allegedly reasonable belief that the deductions they claimed for the Heritage partnership investments were valid because promoters of the investments had repeatedly assured them so was not pertinent under section 6404(e) because it constituted a "reasonable cause argument" prohibited

**[\*24]** by IRM pt. 8.7.7.13.[8] SO Edwards dismissed their assertion that they had not been informed during the TEFRA litigation that they could post a bond to suspend interest accrual, because (he concluded) "the statute doesn't provide for interest abatement when the IRS doesn't advise the Taxpayer to post a bond." SO Edwards accordingly determined that "the proposed levy balances the efficient collection of taxes with your legitimate concern that the collection action be no more intrusive than necessary".

Further Tax Court proceedings

Proceedings on petitioners' Tax Court petition resumed in July 2017; trial was thereafter set for June 4, 2018; and in the interim, the parties engaged in discovery. The Commissioner filed a motion for summary judgment on April 5, 2018, contending that Appeals did not abuse its discretion when it issued the supplemental notice of determination denying abatement of interest and sustaining the Levy Notice. Petitioners filed a notice of objection opposing summary judgment by highlighting the lack of evidence in the record rather than identifying specific facts in dispute. With respect to abatement based on unreasonable

---

[8]Internal Revenue Manual pt. 8.7.7.13 (May 15, 2012) includes the following "[n]ote: See Treasury Regulation section 301.6404-2(c) for examples of ministerial and managerial acts. Do not abate interest based on 'reasonable cause criteria'."

**[*25]** ministerial or managerial delay by the IRS, petitioners argue that in SO Edwards' documentation of his review of the TEFRA litigation, he failed to elucidate the specific reasons that each continuance had been requested and therefore "SO Edwards' case history fails to establish a sufficient factual basis that Petitioners are unable to prove the interest assessment was the result of an unreasonable delay by Respondent." Similarly petitioners argue that SO Edwards did not adequately address the argument that the IRS failed to inform them that they could post a bond because "he simply states that he could not find proof" thereof. Finally, they argue that SO Edwards "created a new [and incorrect] legal standard" in his application of section 6404(a): "[I]t appears that he determined that I.R.C. § 6404(a) applies only when an interest assessment would not exist 'but for' advice by the IRS." Petitioners contend that summary judgment would be premature because--

> Petitioners believe Respondent has in its possession, custody, or control, relevant records not currently available to Petitioners, which further strengthen their claims of unreasonable delay or error, such as the records SO Edwards reviewed. These records were requested via formal discovery, and Petitioners are waiting to receive the discovery responses from Respondent.

> Petitioners also raise new issues regarding "respondent's delays and errors after the filing of the interest abatement request," pointing to the six months that

[*26] elapsed between their initial request for interest abatement and any further contact from the IRS, the year that elapsed while SO Raygosa mistakenly disposed of their CDP case without considering interest abatement, and the time that SO Edwards took to complete his administrative hearing and issue the supplemental notice of determination, which included at least one 3-month delay he acknowledged was due to other demands of his caseload.

Petitioners filed a motion to compel on May 7, 2018, seeking, inter alia, production of documents they requested April 3, 2018, including "[a]ll records relating to Heritage Park files". The Court initially granted this request without directing the Commissioner to file a response. The Commissioner moved for reconsideration of that ruling, and the Court held a telephone conference with the parties and subsequently vacated its order compelling the discovery. (The Judge assigned to the case thereafter retired, and the case was reassigned in August 2019.)

The Court resumed consideration of the pending motion for summary judgment and held a hearing on January 14, 2020, during which counsel for the parties presented oral argument regarding the legal framework of the abatement claim. At the hearing Mr. Heller appeared for petitioners and urged that they still had not received access to the records that they sought in order to prove the merits

[*27] of their abatement claim (i.e., to show that Appeals abused its discretion when it denied the claim). He also stated that petitioners "had a pretty strong record" supporting their "excessive unfairness" claims. After the hearing and pursuant to order of the Court, the parties submitted supplemental briefs on the issue of whether interest assessed on income tax could properly be the subject of an abatement under section 6404(a).

## Discussion

I.     General legal principles

A.     Summary judgment

The purpose of summary judgment is to expedite litigation and avoid unnecessary trials. Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). The Court may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994). In deciding whether to grant summary judgment, we draw factual inferences in the light most favorable to the nonmoving party, Sundstrand Corp. v. Commissioner, 98 T.C. at 520--in this instance, petitioners. "The opposing party is to be afforded the benefit of all reasonable doubt, and any inference to be drawn from the underlying facts contained in the record must be viewed in a light most

**[\*28]** favorable to the party opposing the motion for summary judgment."

Espinoza v. Commissioner, 78 T.C. 412, 416 (1982).

A party opposing summary judgment "may not rest upon the mere allegations or denials" but rather "must set forth specific facts showing that there is a genuine dispute for trial." Rule 121(d). In a circumstance where such a showing of facts is not possible, Rule 121(e) provides:

> When Affidavits or Declarations Are Unavailable: If it appears from the affidavits or declarations of a party opposing the motion that such party cannot for reasons stated present by affidavit or declaration facts essential to justify such party's opposition, then the Court may deny the motion or may order a continuance to permit affidavits or declarations to be obtained or other steps to be taken or may make such other order as is just. If it appears from the affidavits or declarations of a party opposing the motion that such party's only legally available method of contravening the facts set forth in the supporting affidavits or declarations of the moving party is through cross-examination of such affiants or declarants or the testimony of third parties from whom affidavits or declarations cannot be secured, then such a showing may be deemed sufficient to establish that the facts set forth in such supporting affidavits or declarations are genuinely disputed.

We have no such affidavit or declaration in our record--only assertions by petitioners' counsel that facts they believe exist that would assist their claim have not yet been discovered, and that they anticipate further discovery and, if necessary, trial subpoenas for witnesses who may know such facts.

[*29] Although petitioners did not comply with the precise letter of Rule 121(e), they did previously file a motion to compel, which the Court first granted and then denied. Mr. Heller urged at the hearing and in prior proceedings before the Court that further discovery should be permitted after resolution of the Commissioner's motion for summary judgment. Therefore we construe petitioners' opposition to include the assertion that they cannot sufficiently oppose the Commissioner's factual assertions without further discovery.

B. Interest on Federal income tax liability

Interest on a Federal income tax underpayment arises automatically under section 6601. Under section 6601(a) the interest "shall be paid for the period from * * * ["the last date prescribed for payment"] to the date paid."

Important to this case, section 6601(e)(1) provides that interest arising under section 6601 is "treated as tax"; that is, it "shall be paid upon notice and demand, and shall be assessed, collected, and paid in the same manner as taxes. Any reference in this title * * * to any tax imposed by this title shall be deemed also to refer to interest imposed by this section on such tax."[9]

---

[9]In text above we elide from the quotation of section 6601(e)(1) an exception--"except subchapter B of chapter 63, relating to deficiency procedures"--that is not relevant here.

**[*30]** A taxpayer whose liability is in dispute, and who therefore may (or may not) be incurring a mounting interest obligation while the dispute is pending, has the option of making a "deposit". Under section 6603--effective since October 2004-- a taxpayer may make a cash deposit <u>before</u> assessment toward "any tax imposed under subtitle A or B or chapter 41, 42, 43, or 44 which has not been assessed at the time of the deposit"; and "[t]o the extent that such deposit is used by the Secretary to pay tax, for purposes of section 6601 (relating to interest on underpayments), the tax shall be treated as paid when the deposit is made". Sec. 6603(a) and (b). Before the enactment of section 6603, the IRS had prescribed administratively an equivalent method for taxpayers to make and designate remittances to the IRS as "deposits in the nature of a cash bond" which were "made merely to stop the running of interest" and not "in satisfaction of a tax liability". Rev. Proc. 84-58, secs. 1, 2.03, 1984-2 C.B. 501, 501 <u>supplemented by</u> Announcement 86-114 (Nov. 24, 1986), 1986-47 I.R.B. 46 (specifying how a partner in a partnership may make a deposit of tax or interest upon the issuance of the FPAA), <u>superseded by</u> Rev. Proc. 2005-18, sec. 9, 2005-1 C.B. 798, 801 ("Rev. Proc. 84-58 is superseded, effective with respect to remittances made on or after March 28, 2005"). Petitioners did not ever make such a deposit, either under Rev. Proc. 84-58 or its successor or under section 6603. Viewing the facts in the

**[\*31]** light most favorable to petitioners, we assume for purposes of the Commissioner's motion that the IRS did not specifically advise petitioners that they could suspend the running of interest by making a deposit.

C.    Interest abatement

Congress authorized the IRS to abate interest for reasons specified in section 6404, and the IRS's decisions whether to abate interest are subject to abuse-of-discretion review by this Court.  See sec. 6404(h)(1);[10] Woodral v. Commissioner, 112 T.C. 19, 23 (1999); Foote v. Commissioner, T.C. Memo. 2015-187, at \*15-\*16, aff'd, 700 F. App'x 760 (9th Cir. 2017).  With the exception of this limited power of review over abatement, this Court generally lacks jurisdiction over issues concerning interest.  Urbano v. Commissioner, 122 T.C. 384, 390 (2004); see also Med James, Inc. v. Commissioner, 121 T.C. 147, 151 (2003).

1.    Interest abatement under section 6404(a) ("excessive in amount")

Section 6404(a)(1) empowers the IRS to abate the unpaid portion of the assessment of any tax or any liability in respect thereof that is "excessive in

---

[10]Section 6404(h), by cross-referencing section 7430(c)(4)(A)(ii), imposes a "net worth" requirement on any taxpayer seeking review in the Tax Court.  The parties have stipulated that petitioners' net worth meets that requirement.

[*32] amount".  However, section 6404(b) precludes abatement under section 6404(a)(1) of interest on income tax.  <u>Urbano v. Commissioner</u>, 122 T.C. at 395. That is, as we have observed, "what section 6404(a) gives, section 6404(b) takes away (in certain circumstances)."[11]  <u>Adams v. Commissioner</u>, T.C. Memo. 2019-99, at *8-*9 (citing <u>Urbano v. Commissioner</u>, 122 T.C. at 390), <u>aff'd</u>, 811 F. App'x 276 (5th Cir. 2020).  This is so because section 6404(b) provides that a taxpayer may not file a claim for abatement "in respect of any assessment of any tax imposed under subtitle A or B."  As we explain below in part II.A, petitioners have not persuaded us that we should alter our interpretation of the statute.

---

[11]The text of these paragraphs is as follows:

(a)  General rule.--The Secretary is authorized to abate the unpaid portion of the assessment of any tax or any liability in respect thereof, which--

(1) is excessive in amount, or

(2) is assessed after the expiration of the period of limitation properly applicable thereto, or

(3) is erroneously or illegally assessed.

(b)  No claim for abatement of income, estate, and gift taxes.--No claim for abatement shall be filed by a taxpayer in respect of any assessment of any tax imposed under subtitle A or B.

**[\*33]**        2.        <u>Interest abatement under section 6404(e) ("ministerial" or "managerial" error or delay)</u>

Section 6404(e)(1)(A) authorizes the Commissioner to abate an assessment of interest on "any deficiency attributable * * * to any unreasonable error or delay by an officer or employee of the Internal Revenue Service * * * in performing a ministerial or managerial act".  "Ministerial act means a procedural or mechanical act that does not involve the exercise of judgment or discretion, and that occurs during the processing of a taxpayer's case after all prerequisites to the act, such as conferences and review by supervisors, have taken place."  26 C.F.R. sec. 301.6404-2(b)(2), Proced. & Admin. Regs.  A "[m]anagerial act" is "an administrative act that occurs during the processing of a taxpayer's case involving the temporary or permanent loss of records or the exercise of judgment or discretion relating to management of personnel."  <u>Id.</u> subpara. (1).  A decision concerning the proper application of Federal tax law is neither a managerial nor a ministerial act.  <u>Id.</u> para. (b).

The flush text of section 6404(e)(1) adds two caveats.  First, an error or delay is taken into account only after the IRS has contacted the taxpayer in writing with respect to the deficiency or the payment.  Sec. 6404(e)(1) (flush text).  For purposes of evaluating this requirement with respect to partnership items that are

[*34] subject to litigation in a TEFRA proceeding, the relevant date occurs when the Commissioner first contacts the taxpayers in writing regarding the examination of the partnership.  See Larkin v. Commissioner, T.C. Memo. 2010-73, 2010 WL 1490588, at *3.  Second, an error or delay is considered "only if" no significant aspect of the error or delay is attributable to the taxpayer involved.  Sec. 6404(e)(1)(B).  We have construed this "attributable to the taxpayer" exclusion to mean that "no abatement is warranted where, notwithstanding a mistake by the Commissioner, no earlier payment [of the tax] would have been made."  See Braun v. Commissioner, T.C. Memo. 2005-221, 2005 WL 2293523, at *5.  This is so because "[i]nterest accruing merely because a taxpayer fails to pay the assessed tax is not subject to abatement under section 6404(e)."  Id.

In addition to these requirements, a request for abatement under section 6404(e) cannot be formulated as a broad request to waive all interest; rather, the taxpayer must identify a mistake by the Commissioner and must also link the mistake to a specific period of delay as to which interest should be abated.  See Hancock v. Commissioner, T.C. Memo. 2012-31, 2012 WL 311663, at *4 (citing Hill v. Commissioner, T.C. Memo. 2009-39, Guerrero v. Commissioner, T.C. Memo. 2006-201, and Braun v. Commissioner, T.C. Memo. 2005-221).  The "requisite correlation between an error or delay attributable to the Commissioner

**[\*35]** and a specific period of time is, for the most part, missing where a taxpayer requests that all interest with respect to the deficiencies be abated." Braun v. Commissioner, 2005 WL 2293523, at \*5 (citing Donovan v. Commissioner, T.C. Memo. 2000-220).

D.    Collection review procedure for a proposed levy

If a taxpayer fails to pay any Federal tax liability after notice and demand, section 6331(a) authorizes the IRS to collect the tax by levy on the taxpayer's property.  However, Congress has added to chapter 64 of the Code a provision (in subchapter D, part I) entitled Due Process for Collections", with which the IRS must comply before it can proceed with a levy:  The IRS must first issue a final notice of intent to levy and must notify the taxpayer of the right to an administrative hearing.  Sec. 6330(a) and (b)(1).  After receiving such a notice, the taxpayer may request that administrative hearing, which is called a "CDP hearing" and takes place before Appeals.  Sec. 6330(a)(3)(B), (b)(1).

Section 6330(c) sets forth collection-related issues to be considered at the agency-level CDP hearing, none of which is at issue here.  Finally, in some circumstances[12] section 6330(c)(2)(B) permits the taxpayer to contest the existence

---

[12]Section 6330(c)(2)(B) permits a liability challenge only if the taxpayer did not receive a notice of deficiency or otherwise have an opportunity to dispute the

(continued...)

**[\*36]** and amount of the underlying tax liability. The Commissioner

acknowledges that petitioners were entitled at the CDP hearing to dispute their

liability for interest by requesting an abatement. The parties agree that this was a

permissible liability challenge, and we so assume.[13]

###### E.     Tax Court review

When Appeals issues its determination, the taxpayer may petition the Court

for review, pursuant to section 6330(d)(1), as petitioners have done. Section 6330

does not state what our standard of review should be in CDP cases; but we have

taken our cue from legislative history, see Goza v. Commissioner, 114 T.C. 176,

181-182 (2000), and we follow an abuse-of-discretion standard in some

---

[12](...continued)
tax liability.

[13]Perhaps one could argue that a dispute about the propriety of Appeals'
denying an abatement of interest is not a liability challenge but instead involves an
alleged failure of "verification" under section 6330(c)(1), or constitutes a
"challenge to the appropriateness of collection actions" under
section 6330(c)(2)(A)(ii), or is some other "relevant issue relating to the unpaid
tax or the proposed levy" under section 6330(c)(2)(A). We need not entertain
those possibilities, however, not only because the parties have agreed that this is a
liability challenge but also, and more important, because the principal
consequences of deciding whether an issue is or is not a liability challenge are also
agreed: Deciding whether an issue is a liability issue can affect whether the
challenge is permitted, and the parties agree that here the challenge is permitted.
Deciding whether an issue is a liability issue also usually affects what the Court's
standard of review should be, and the standard of review here is not in contention.
See infra pt. I.E.

[*37] circumstances and a de novo standard in others:  As to collection-related issues other than the underlying liability, we review Appeals' determination for abuse of discretion, id.; but we have no collection-related issues in dispute here. When an underlying tax liability is properly at issue, the taxpayer in a CDP case is usually entitled to de novo review.  Id. at 182.  However, Appeals' notice of determination serves as its final determination on the matter of abatement under section 6404(h).  See Gray v. Commissioner, 138 T.C. 295, 303-305 (2012), supplemented by 140 T.C. 163 (2013).  As we observed in part I.C, section 6404(h)(1) empowers us "to determine whether the Secretary's failure to abate interest under this section was an abuse of discretion".  (Emphasis added.)

Applying that abuse-of-discretion standard, we decide whether the determination was arbitrary, capricious, or without sound basis in fact or law.  See Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006).

II.    Analysis

A.    Abatement under section 6404(a)

The Commissioner contends that SO Edwards's decision to deny abatement on equitable grounds under section 6404(a) was neither arbitrary nor capricious, nor did it lack sound basis in law, because "[t]he disputed interest was assessed on

**[\*38]** the correct principal amount, and was not assessed erroneously or at usurious rates", and (more germane to petitioners' arguments) because SO Edwards did not misapply the law. In the supplemental notice of determination he determined that petitioners did not meet the legal criteria for abatement under section 6404(a); and the Commissioner argues that regardless of his precise reasoning--i.e., whether he so concluded because of "the lack of a clear equitable legal standard" or, as petitioners contend, he erroneously applied a "but-for" test to determine entitlement to relief under section 6404(a)--his conclusion was correct and was therefore not an abuse of discretion. We have previously held that Appeals cannot abuse its discretion where it declines to authorize abatement of interest that the statute itself does not authorize. See Woodral v. Commissioner, 112 T.C. at 21-25 (holding that section 6404(e) does not authorize abatement for interest on employment taxes and that "a person with no discretion simply cannot abuse it"). Accordingly, we turn to the merits of the parties' arguments regarding whether section 6404(a) authorizes the IRS to abate interest assessed on income tax.

Petitioners rely on our opinions in King v. Commissioner, T.C. Memo. 2015-36, and H. & H. Trim & Upholstery Co. v. Commissioner, T.C. Memo. 2003-9, for the proposition that section "6404(a) [provides] grounds for interest

[*39] abatement when interest is excessive, * * * defined [in King] as "unfair[]

under all facts and circumstances". But these cases involved assessments of

employment tax pursuant to sections 3102 and 3402 (in subtitle C), not

assessments of income tax under subtitle A (explicitly excluded from

section 6404(a) by section 6404(b)(1)). Moreover, because employment taxes are

not eligible for abatement under section 6404(e), see Woodral v. Commissioner,

112 T.C. at 25, the primary issue in these opinions was whether abatement could

be obtained for employment taxes under section 6404(a). These opinions are thus

inapposite where, as here, petitioners seek an abatement of interest on income tax.

The Commissioner argues that, consistent with our holdings in Urbano v.

Commissioner, 122 T.C. 384, Adams v. Commissioner, T.C. Memo. 2019-99,

Kersh v. Commissioner, T.C. Memo. 2009-260, and Corson v. Commissioner,

T.C. Memo. 2009-95, "section 6404(b) * * * is a categorical bar to the application

of section 6404(a)(1) in all cases pertaining to interest on the assessment of

income taxes". But petitioners urge that these cases

> have generally quickly disposed of Subsection A arguments
> contesting interest in income tax cases. However, it is Petitioners'
> position that prior decisions were based on a misinterpretation of the
> statute. * * *

**[*40]** [A] plain reading of Subsection B (and Treas. Reg. § 301.6404-1(b)[14]) provides taxpayers are generally barred from filing claims for abatements of taxes imposed under subtitle A (i.e., income tax principal).

Petitioners argue that the statutory phrase in section 6404(b) "in respect of any assessment of any <u>tax</u> imposed under subtitle A or B" (emphasis added) means any assessment of tax <u>only</u>, and that the "silence regarding 'interest' controls since Congress used the phrase 'assessment of any tax or any liability in respect thereof'" in section 6404(a). We disagree.

Section 6601(e)(1) provides, with limited exceptions inapplicable here, that any reference in the Code to any "tax" imposed by the Code "shall be deemed also to refer to interest imposed by this section on such tax". Sec. 6601(e)(1).

_____

[14]To establish that "tax" means "only tax" and that to implicate interest requires an explicit statement regarding "interest", petitioners quote from and emphasize portions of this regulation as follows:

> (b) No claim for abatement may be filed with respect to income, estate, or gift <u>tax</u>.

> (c) <u>Except in case of income, estate, or gift tax</u>, if more than the correct amount of tax, <u>interest</u>, additional amount, addition to the tax, or assessable penalty is assessed but not paid to the district director, the person against whom the assessment is made may file a claim for abatement of such overassessment.

26 C.F.R. sec. 301.6404-1, Proced. & Admin. Regs. (emphasis added by petitioners).

**[\*41]** Applying this principle, we have held that the prohibition of section 6404(b) that "[n]o claim for abatement shall be filed by a taxpayer <u>in respect of any assessment of any tax</u> imposed under subtitle A or B" (emphasis added) means that Congress did not authorize abatement for any tax imposed under subtitle A or B <u>or for any interest imposed on that tax</u>.  <u>Urbano v. Commissioner</u>, 122 T.C. at 395; <u>see also</u> <u>Goettee v. Commissioner</u>, 192 F. App'x 212, 217 (4th Cir. 2006) ("Because the excess interest at issue is a liability 'in respect of' an income tax assessment, and because income tax assessments are specifically barred from consideration, the Tax Court correctly refused to consider the Goettees' claim under Section 6404(a)."), <u>aff'g</u> 124 T.C. 286 (2005), <u>and</u> T.C. Memo. 2003-43.

We find similarly unavailing petitioners' arguments regarding the text of the regulations that implement section 6404.  It is true that, as in the statute itself, only "tax" is mentioned in the statement of the bar against abatement in 26 C.F.R. section 301.6404-1(b), Proced. & Admin. Regs. ("No claim for abatement may be filed with respect to income, estate, or gift tax").  And petitioners point to a supposed distinction between "tax" and "tax \* \* \* [and] interest" in the description of the allowance of abatement in section -1(c), which states:

> (c) <u>Except in case of income</u>, estate, or gift <u>tax</u>, if more than the correct amount of <u>tax, interest</u>, additional amount, addition to the tax, or assessable penalty is assessed but not paid to the district director,

**[*42]** the person against whom the assessment is made may file a claim for abatement of such overassessment. * * * [Emphasis added.]

However, the regulations repeat the provision of section 6601(e) of the statute to the effect that interest is treated as tax. See 26 C.F.R. sec. 301.6601-1(f)(1), Proced. & Admin. Regs.[15] Not surprisingly, the regulations follow the statute in construing "tax" to include interest on that tax. If "tax" is "deemed also to refer to interest imposed * * * on such tax"--as the statute, see sec. 6601(e)(1), and the regulation, see sec. 301.6601-1(f)(1), Proced. & Admin. Regs., both provide--then a bar on the abatement of "income tax" and an allowance of abatement that excepts "income tax" necessarily bars and excepts the "interest imposed" on income tax.

Appeals cannot abuse its discretion by declining to do something as to which Congress did not confer discretion, Woodral v. Commissioner, 112 T.C. at 25; and section 6404(a) does not give the IRS discretion to abate interest on

---

[15]26 C.F.R. section 301.6601-1(f)(1), Proced. & Admin. Regs., provides:

> Any interest prescribed by section 6601 shall be assessed and collected in the same manner as tax and shall be paid upon notice and demand by the district director or the director of the regional service center. Any reference in the Code (except in subchapter B, chapter 63, relating to deficiency procedures) to any tax imposed by the Code shall be deemed also to refer to the interest imposed by section 6601 on such tax. * * * [Emphasis added.]

**[\*43]** income tax.  Accordingly, we will grant the Commissioner's motion as it relates to any abatement of interest under section 6404(a).

B.  Abatement under section 6404(e)

Viewing the facts in the light most favorable to petitioners, we assume that they requested abatement under section 6404(e) for the period constituting the nearly 13-year duration--from June 27, 2000, through April 1, 2013--of the TEFRA litigation by the Heritage partnerships.[16]  We note that the record before us does not reveal the date on which the Commissioner first contacted petitioners in writing regarding the examination of the Heritage partnerships' returns, see sec. 6404(e), but we assume for purposes of summary judgment that it occurred before the commencement of the TEFRA litigation.

---

[16]Though petitioners now also complain about the delay caused by the CDP proceeding before SO Raygosa in which she incorrectly concluded they could not raise the issue of interest abatement and allege additional periods of delay in SO Edwards's processing of the case on remand, these issues were not properly placed before SO Edwards and therefore do not constitute a determination that we are authorized to review.  See Giamelli v. Commissioner, 129 T.C. 107, 114 (2007) ("[I]ssues under section 6330 must have been raised properly when the Appeals officer made her determination before we can review those issues in the context of an appeal of that determination").  And the same applies under section 6404.  See Foote v. Commissioner, T.C. Memo. 2015-187, at \*16-\*17, aff'd, 700 F. App'x 760 (9th Cir. 2017).

**[*44]**       1.       Failure to advise of the opportunity to make a "deposit"

We first address petitioners' argument that the Commissioner's failure to inform them of the opportunity to suspend the running of interest by making a "deposit" constituted an act of "delay" within the meaning of section 6404(e). SO Edwards found no evidence that such a "failure" occurred, and moreover concluded that "the statute doesn't provide for interest abatement when the IRS doesn't advise the Taxpayer to post a bond."  Although (as we have assumed) the Commissioner did not specifically advise petitioners of the opportunity to post a cash bond, the IRS has since 1984--long before the years at issue--published guidance advising all taxpayers of the opportunity to remit to the IRS a deposit in the nature of a cash bond and (relevant here) has also advised how to do so before the assessment of the tax upon which interest may be assessed.  The accrual of such interest could be reduced or eliminated by following those procedures.  See Rev. Proc. 84-58, supra, and other published guidance referenced supra part I.B. Because this information was available to the public, petitioners' failure to make a deposit to halt interest accrual cannot be attributed to delay or failure of the IRS to advise them personally of this information.[17]  The supposed absence of a personal

_____

[17]The Commissioner does not contend that his motion should be granted because the undisputed facts of record demonstrate that petitioners, in the absence

(continued...)

**[*45]** invitation to make a deposit did not give rise to an abuse of discretion when SO Edwards determined that section 6404(e) does not provide for interest abatement under such circumstances.

2. Delay during criminal proceedings

SO Edwards observed (and petitioners do not dispute) that the criminal proceedings against the conspirators involved in the Heritage partnerships did not conclude until 2009 (though he did not give a precise date, nor does the record reveal one). Petitioners argue that the entire duration of the 2000-2013 civil TEFRA litigation–which, from 2001-2009, was concurrent with the criminal proceedings--constituted an unreasonable delay. But "[b]road allegations regarding a lack of timeliness and accuracy" are generally insufficient to identify an error or delay arising from a ministerial or managerial act of the IRS. Bartelma v. Commissioner, T.C. Memo. 2005-64, 2005 WL 713798, at *3.

With respect to pending litigation, it is well established that "[t]he mere passage of time in the litigation phase of a tax dispute does not establish error or

---

[17](...continued)
of any alleged delay, would nonetheless have failed to pay the liabilities as required by section 6404(e)(1); and we assume for purposes of the Commissioner's motion that petitioners would have paid the liabilities, consistent with their allegation throughout the CDP proceedings that they would pay the liabilities once their request for interest abatement was addressed.

**[\*46]** delay" under section 6404(e).  <u>Lee v. Commissioner</u>, 113 T.C. 145, 150 (1999).  And delay during civil litigation that is the result of the Commissioner's strategy to first dispose of criminal proceedings "necessarily require[s] the exercise of judgment" and therefore cannot constitute a ministerial act.  <u>Id.</u> at 150-151; <u>see also</u> <u>Taylor v. Commissioner</u>, 113 T.C. 206, 211-212 (1999) (explaining the reasons for the IRS's longstanding policy "to defer civil assessment and collection until the completion of criminal proceedings" (quoting <u>Badaracco v. Commissioner</u>, 693 F.2d 298, 302 (3d Cir. 1982), <u>rev'g</u> T.C. Memo. 1981 404, <u>aff'd</u>, 464 U.S. 386 (1984)), <u>aff'd</u>, 9 F. App'x 700 (9th Cir. 2001); <u>Dadian v. Commissioner</u>, T.C. Memo. 2004-121, 2004 WL 1118291, at \*4 (holding that denial of interest abatement was not abuse of discretion with respect to period of delay caused by a related criminal investigation of tax shelter promoter).

Nor does that exercise of judgment constitute a "managerial act" as contemplated by the statute.[18]  <u>See</u> <u>Adams v. Commissioner</u>, at \*11 n.6; <u>see also</u> 26 C.F.R. sec. 301.6404-2(b)(1) ("Managerial act means an administrative act that

---

[18]Section 6404(e) was amended in 1996, effective only for tax years beginning after July 30, 1996, to allow relief from interest that piles up because of "managerial acts" by the IRS.  Taxpayer Bill of Rights 2, Pub. L. No. 104-168, sec. 301(a)(2), 110 Stat. at 1457 (1996).  As a result, much of our jurisprudence in this area evaluates only whether there was a "ministerial act" within the meaning of section 6404(e).

[*47] occurs during the processing of a taxpayer's case involving the temporary or permanent loss of records or the exercise of judgment or discretion relating to management of personnel").  Regulatory examples of delay due to managerial acts that may constitute grounds for abatement include delays in an audit due to the reassignment of IRS personnel working on the audit, an extended grant of sick leave to IRS personnel without reassigning the case, and the IRS's act of misplacing a case file.  See 26 C.F.R. sec. 301.6404-2(c), Examples (4), (5), and (6).  The decision to delay the processing of a taxpayer's case pending the completion of an audit of a related return--such as one involving a tax shelter in which the taxpayer invested--is classified as a "general administrative decision" which constitutes neither a ministerial nor managerial act.  Id. Example (7).  We therefore hold that the Commissioner is entitled to summary judgment under section 6404(e) for the period from the commencement of the TEFRA litigation until the conclusion of the criminal proceedings in 2009.

        3.     Post-criminal proceeding delay during TEFRA litigation

        a.     February 2009 through August 2012

As to the remaining period of the Heritage partnerships' TEFRA litigation, the record establishes that a new TMP was appointed pursuant to the Commissioner's motion in February 2009, and therefore any allegation of delay on

**[\*48]** the part of the IRS relating to this appointment would have coincided with the criminal litigation, the pendency of which precludes entitlement to abatement for the reasons stated above in part II.B.2. In June 2010 the Heritage partnerships obtained new counsel who immediately began actively litigating their cases by engaging in discovery and eventually filing a motion for partial summary judgment in May 2012. That motion was denied in late July 2012. Mere weeks later on August 7, 2012, the parties filed the stipulations which ultimately formed the basis of their settlement. Because the record shows that the passage of time during this stage of the litigation was due to affirmative litigation efforts of the Heritage partnerships (and not the IRS), we will grant the Commissioner's motion for summary judgment under section 6404(e) as to the period from the end of the criminal proceedings until August 7, 2012.

b.      <u>August 2012 through January 2013</u>

There is only one period for which we cannot rule out the existence of the type of managerial or ministerial act that could constitute unreasonable delay under section 6404(e), and that is the period from the date of the stipulations on August 7, 2012, until the Commissioner filed his second motion for entry of decision (after voluntarily withdrawing the first) on January 2, 2013. It appears from the pleadings in the Heritage partnership cases that some delay occurred that

[*49] was not clearly due to ongoing litigation efforts or litigation strategy; what is not apparent is whether such delay constituted a managerial or ministerial act of the type contemplated by section 6404(e). We have previously held that the IRS's nearly five-year delay in the counter-signing of a settlement agreement during the pendency of partnership litigation constituted an unreasonable delay due to a ministerial act of the IRS, see Mathia v. Commissioner, T.C. Memo. 2009-120, 2009 WL 1471716, at *15-*17, aff'd, 669 F.3d 1080 (10th Cir. 2012); and we cannot say whether the shorter delay in this case had the same defect.

It is not apparent that SO Edwards considered this nearly 5-month period from August 7, 2012, until January 2, 2013, in his evaluation of petitioners' claim under section 6404(e). Because we draw all inferences in favor of petitioners and because we have concluded that they have opposed the Commissioner's motion for summary judgment on the basis that they lack affirmative facts necessary to create a factual dispute, we will not grant the Commissioner's motion for summary judgment as to this limited time period. Rather, we will allow further discovery related to potential delay in entry of the stipulated decisions in the Heritage partnership cases, limited to this five-month period: August 7, 2012, through January 2, 2013.

**[\*50]**         c.         <u>January 2013 through April 2013</u>

The continued pendency of the case from January 2, 2013, until the entry of decisions on April 1, 2013, was not a product of any action of the IRS but was rather a function of the time periods required under Rule 248(b).  Therefore, Appeals did not abuse its discretion when it denied abatement under section 6404(e) for interest assessed during that time.

Conclusion

For the reasons stated in this opinion, we will grant the Commissioner's motion for summary judgment in part, holding that Appeals did not abuse its discretion when it declined to offer any collection alternatives, that Appeals did not abuse its discretion when it denied abatement under section 6404(a), and that Appeals did not abuse its discretion when it denied abatement under section 6404(e) because of the Commissioner's supposed failure to inform petitioners of the opportunity to suspend the running of interest by making a "deposit", nor when it denied abatement for the period other than from August 7, 2012, through January 2, 2013.  As to that nearly five-month period, we will deny the Commissioner's motion for summary judgment and will order further proceedings.

[*51] To reflect the foregoing,

An appropriate order will be issued.